NATIONWIDE MUTUAL INSURANCE COMPANY *vs.*
COMMISSIONER OF INSURANCE & others.[1]

Suffolk. January 10, 1986. — April 28, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Commissioner of Insurance. Insurance,* Agent, Motor vehicle insurance,
Commissioner of Insurance. *Statute,* Retrospective statute. *Due Process
of Law,* Retrospective statute. *Constitutional Law,* Impairment of con-
tract.

Where the Legislature, in 1979, in enacting G. L. c. 175, § 162D, to
authorize the Commissioner of Insurance to establish agents' commission
rates for certain motor vehicle insurance companies, had unambiguously
limited the commissioner's authority to those companies operating under
the "American Agency System," the amendment to § 162D accomplished
by St. 1980, c. 398, which applied the commissioner's rate to "any
other system, other than that of an employer to employee relationship,"
was to be treated as an extension, rather than a clarification, of the
authority originally granted the commissioner, so that an insurance com-
pany not operating under the "American Agency System" was not retroac-
tively subject to the 1979 statute and the 1980 commission rates prom-
ulgated thereunder. [420-421]
The Legislature, in enacting provisions of St. 1980, c. 398, which extended
the authority of the Commissioner of Insurance to establish agents'
commission rates for motor vehicle insurers, sufficiently indicated its
intention to enforce the statute despite existing contractual rights, so
that the new provisions were effective to displace, for the year 1981,
an insurance company's commission rate which had been fixed in 1977
by a five-year contract between the company and its independent agents.
[421-422]
Discussion of the factors considered by this court in determining whether
an enactment by the Legislature unconstitutionally impairs the obligation
of a contract. [423]
The Legislature validly exercised its police power by enacting St. 1980,
c. 398, a measure extending the authority of the Commissioner of Insurance
under G. L. c. 175, § 162D, to establish agents' commission rates for

---

[1] Certain exclusive agents for Nationwide Mutual Insurance Company,
as interveners.

motor vehicle insurers, inasmuch as the statute was reasonably directed toward achieving a proper purpose, namely that of assuring the quality of services rendered by insurance agents to the consuming public. [423-424]

Provisions of St. 1980, c. 398, which extended the authority of the Commissioner of Insurance under G. L. c. 175, § 162D, to establish agents' commission rates for motor vehicle insurers, did not offend the contracts clause of the United States Constitution by displacing, for the year 1981, an insurance company's commission rate which had been fixed in 1977 by a five-year contract between the company and its independent agents, since the company's contractual rights were to be viewed in the context of a pervasively regulated industry and since the statute, moreover, did not affect commissions earned prior to its enactment. [424]

In an action by a motor vehicle insurance company challenging the applicability to it of agents' commission rates fixed by the Commissioner of Insurance, the judge acted within his discretion in concluding that the company should not be subject to the rates until it had been allowed an opportunity to present contentions respecting its expense base in a hearing before the commissioner. [425]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 2, 1981.

On transfer to the Superior Court Department the case was heard by *George W. Cashman, J.*, sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*David A. McLaughlin* for Steven E. Barnicoat & others, interveners.

*Thomas A. Barnico,* Assistant Attorney General, for the Commissioner of Insurance.

*Robert W. Mahoney* for the plaintiff.

HENNESSEY, C.J. Nationwide Mutual Insurance Company (Nationwide), a motor vehicle insurance company, commenced an action in the Supreme Judicial Court for Suffolk County against the Commissioner of Insurance (commissioner) challenging the application and constitutionality of two statutes authorizing the commissioner to establish commission rates for motor vehicle insurance agents. Specifically, Nationwide sought a declaration that St. 1979, c. 149, and St. 1980, c. 398, do not apply to Nationwide; and that, in the alternative, if

these statutes do apply to Nationwide they unconstitutionally impair the contract executed in 1977 between Nationwide and its agents.

Twenty-one Nationwide agents intervened in this action as defendants, and counterclaimed for damages in the amount of commissions allegedly due to them under the statutes in question. A single justice of this court transferred the case to the Superior Court for disposition pursuant to G. L. c. 211, § 4A (1984 ed.). All parties filed motions for summary judgment, claiming that there were no facts in dispute. The motion judge thereafter ordered entry of a judgment which provided that (1) the 1980 rates established by the commissioner, pursuant to G. L. c. 175, § 162D, inserted by St. 1979, c. 149, do not apply to Nationwide and its agents; and (2) the 1981 rates established by the commissioner, pursuant to G. L. c. 175, § 162D, as amended by St. 1980, c. 398, shall not apply to Nationwide and its agents until a hearing has been held by the commissioner regarding Nationwide's expense base.

The commissioner and the agents appealed from the entire judgment. Nationwide appealed only from that portion of the judgment which would subject it, after a hearing, to the commissioner's 1981 rates. We granted the parties' application for direct appellate review. We affirm the judgment of the Superior Court.

The facts are undisputed. Nationwide does business pursuant to an "Exclusive Agency System," under which motor vehicle insurance policies are provided to Commonwealth residents through agents who deal solely in Nationwide insurance. This system is distinguishable from the so-called "American Agency System," under which agents are free to sell insurance products through more than one company.[2] In 1977, Nationwide executed a five-year contract with its exclusive agents, which established a commission rate of 10.69% payable to agents writing motor vehicle insurance policies.

---

[2] Agents who operate under either the "Exclusive Agency System" or the "American Agency System" are regarded as independent agents, in contrast to agents who are employees of an insurance company.

In 1979, the Legislature enacted G. L. c. 175, § 162D, which authorized the commissioner to establish commission rates for independent agents issuing motor vehicle insurance policies under the American Agency System.[3] In December, 1979, after extensive hearings and presentation of evidence, the commissioner issued his first decision pursuant to G. L. c. 175, § 162D, establishing for 1980 a 17% commission rate payable to the agents of insurers operating under the American Agency System. Nationwide did not take part in the hearings leading up to this decision.

On July 7, 1980, the Legislature amended G. L. c. 175, § 162D (St. 1980, c. 398). The statute, as amended, expanded the commissioner's authority by permitting him to set commissions for agents operating under either the American Agency System, "or any other system, other than that of an employer to employee relationship." This amendment became effective on October 5, 1980. After hearings on the proposed rates, the commissioner in December, 1980, established a 16.2% commission rate for 1981. Nationwide did not participate in these hearings.

In November, 1980, Nationwide submitted a memorandum to the commissioner requesting a ruling regarding the effect of the 1980 amendment to G. L. c. 175, § 162D. Specifically, Nationwide sought a ruling to the effect that the amendment would not effect the 10.69% commission rate payable under Nationwide's 1977 contract with its agents. The commissioner responded in February of 1981, ruling that the 17% and 16.2% commission rates established for 1980 and 1981 applied to Nationwide.[4] Nationwide then instituted the present action.

---

[3] General Laws c. 175, § 162D, inserted by St. 1979, c. 149, provided in relevant part: "Any insurer issuing or delivering in the commonwealth either motor vehicle policies or bonds . . . which do[es] business in the commonwealth through independent licensed insurance agents pursuant to the so-called American Agency System shall pay each agent the indicated expense premium commission as established by the commissioner in his opinion . . . ."

[4] The only years for which commission rates are in dispute are 1980 and 1981. Nationwide executed new agreements with its agents in 1982.

1. *1980 Commission Rates.*

The 1979 statute, G. L. c. 175, § 162D, inserted by St. 1979, c. 149, authorized the commissioner to establish commission rates for motor vehicle insurance companies operating under the "American Agency System." By its express terms, the statute does not apply to insurers such as Nationwide, which operate through exclusive agents. The Legislature clearly and unambiguously limited the application of the statute to American Agency System insurers. Where the statutory language is clear, it must be given its plain and ordinary meaning. See *State Bd. of Retirement* v. *Boston Retirement Bd.*, 391 Mass. 92, 94 (1984); *Bronstein* v. *Prudential Ins. Co. of Am.*, 390 Mass. 701, 704 (1984). The judge properly ruled that the 1979 statute does not apply to Nationwide, and that Nationwide therefore is not subject to the 1980 commission rates adopted by the commissioner in December, 1979.

The commissioner and Nationwide's agents argue that the 1980 amendment merely "clarified" G. L. c. 175, § 162D, and therefore that Nationwide's inclusion in the statutory scheme should be given retroactive effect to the date of the original enactment.[5] In 1980 the Legislature amended the statute to apply to "any other system, other than that of an employer to employee relationship." G. L. c. 175, § 162D, as amended by St. 1980, c. 398. The commissioner and agents argue that this change in the statute's language evidences the Legislature's intent from the outset to include companies who operate under the Exclusive Agency System. This argument is unpersuasive. The language "American Agency System" in the first statute is clear, and the parties agree that Nationwide does not operate under that form of agency system. The 1980 amendment apply-

---

[5] The commissioner argues that this construction would subject Nationwide to the 1980 commission rates promulgated pursuant to the 1979 statute. The agents argue that the 17% commission rate established for 1980 should apply to policies issued by Nationwide's agents after May, 1979, the effective date of G. L. c. 175, § 162D.

We need not resolve this issue, as we determine that Nationwide and its agents were not affected by G. L. c. 175, § 162D, until the commissioner established the 1981 commission rate of 16.2%.

ing the commissioner's rate to "any other system . . ." must thus be considered an extension, rather than a clarification, of the original statute. Nationwide therefore is not subject to the 1979 statute and the 1980 commission rates promulgated thereunder.

2. *1981 Commission Rates.*

The 1980 amendment to G. L. c. 175, § 162D, authorizes the commissioner to establish commission rates for motor vehicle insurers which do business through an independent insurance agency system, "other than that of an employer to employee relationship." Nationwide does not argue that its Exclusive Agency System constitutes an employer-employee relationship. Nationwide thus clearly falls within the language of the July, 1980, amendment, and is subject to the commission rates promulgated by the commissioner after that date.

Nationwide argues that, absent express legislative intent, the 1980 amendment to G. L. c. 175, § 162D, may not be interpreted to disturb preexisting contract rights between Nationwide and its agents. To the extent that the 1980 amendment would replace the contractual 10.69% commission rate agreed on between Nationwide and its agents with a commission to be determined by the commissioner, then it must be considered "retroactive" in nature.[6] As a general rule, however, a statute will be construed to operate retroactively only where the Legislature evidences a clear intent to alter existing contract rights. *Nantucket Conservation Found.* v. *Russell Management, Inc.*, 380 Mass. 212, 214 (1980). *Liberty Mut. Ins. Co.* v. *Wolfe,* 7 Mass. App. Ct. 263, 266 (1979). Nationwide argues that, because the 1980 amendment does not expressly provide that existing contract rights will be displaced, Nationwide is not subject to the statute until its 1977 contract has expired. We disagree.

---

[6] The commissioner contends that the 1980 amendment operates prospectively, because it affects only commissions payable after the date of its enactment. A statute is deemed retroactive if it affects rights stemming from contracts entered into before the statute's enactment. For the purpose of this discussion, we refer to a statute as "retroactive" where it alters contract rights vested prior to the adoption of the statute, irrespective of when this alteration occurs.

The language of the amendment indicates that its provisions are to take effect immediately, irrespective of existing contracts. The amendment provides that companies within its scope "shall pay" to their agents the commissions established by the commissioner. The word "shall" indicates immediate payment, and an intention to enforce the statute despite existing rights. See *Nantucket, supra.* In addition, the emergency preamble to the 1979 act provides that "[t]he deferred operation of this act would tend to defeat its purpose, which is to *immediately require* certain insurers to pay the premium commission earned by certain insurance agents" (emphasis added). G. L. c. 175, § 162D, inserted by St. 1979, c. 149. This preamble, although not included in the 1980 amendment "further defining" the agents to whom such commissions must be paid, evidences the intent of the Legislature to abrogate existing contract rights.

In light of these provisions, we conclude that the words used by the Legislature evidence an intent to make the 1980 amendment to G. L. c. 175, § 162D, retroactive. Therefore, the statute and the commissioner's 1981 rate decision promulgated thereunder apply to Nationwide, despite the outstanding contract between the company and its agents. The remaining issue is whether the retroactive application of this statute exceeds constitutional limitations. Nationwide argues that application of the commissioner's 1981 rates to Nationwide would unconstitutionally impair its 1977 contract, and would deprive Nationwide of its property without due process of law.[7]

---

[7] Nationwide bases its first argument on the impairment-of-contracts clause of the United States Constitution, art. 1, § 10, cl. 1, which provides in relevant part, "No state shall . . . pass any bill of attainder, ex post facto law, or law impairing the Obligation of Contracts . . . ." Nationwide bases its second argument on the due process clause of the Fourteenth Amendment to the United States Constitution and the cognate provisions of the Massachusetts Declaration of Rights, arts. 1, 10, and 12.

We need not discuss Nationwide's arguments under the impairment-of-contracts clause and due process clause separately. For the purpose of analyzing the constitutionality of a retroactive statute, these contentions "amount to much the same thing." *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.,* 374 Mass. 181, 190 (1978). See *Opinion of the Justices,* 364 Mass. 847, 863 (1973).

A statute is not per se unconstitutional merely because it has the effect of restricting, or barring altogether, the performance of contracts entered into prior to its amendment. *Exxon Corp.* v. *Eagerton,* 462 U.S. 176, 190 (1983). *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge,* 395 Mass. 535, 555 (1985). The Legislature may act pursuant to a valid exercise of its police power for the general good of the public, even though contracts previously entered into may be affected. *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.,* 459 U.S. 400, 411-412 (1983). *Fitchburg Gas & Elec. Light Co.* v. *Department of Pub. Utils.,* 395 Mass. 836, 854 (1985). An impairment will be upheld if it is reasonable and necessary to serve an important public purpose. *United States Trust Co.* v. *New Jersey,* 431 U.S. 1, 25 (1977). Only those statutes which, on a balancing of opposing considerations, are deemed to be unreasonable will be held unconstitutional. *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.,* 374 Mass. 181, 190 (1978). We examine the reasonableness of a retroactive statute from three principal viewpoints: the nature of the public interest which motivated the Legislature to enact the statute; the nature of the rights affected retroactively; and the extent or scope of the statutory impact. *Id.* at 191. See generally Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 697 (1960). Upon balancing these considerations, we conclude that G. L. c. 175, § 162D, is constitutional as applied to Nationwide.

First, Nationwide argues that this statute is not designed to achieve a legitimate public purpose, but rather to benefit a small class of independent motor vehicle insurance agents. The law requires companies to pay their agents according to rates established by the commissioner in his annual decision. The Legislature could reasonably conclude that regulation of commission rates will more fairly allocate commission allowances, will enhance the quality of an agent's service to his clients, and will thereby improve the over-all caliber of the insurance product delivered to Commonwealth residents. The State has a valid interest in assuring the quality of the services

rendered to the consuming public by insurance agents: this interest is furthered by requiring that agents be compensated at a fair and adequate rate.

Second, our conclusion that G. L. c. 175, § 162D, is constitutional as applied to Nationwide is supported by the nature of the contract rights affected in this case. The rights asserted by Nationwide under its 1977 agreement must be viewed against the background of the Legislature's pervasive regulation of the automobile insurance industry. *American Mfrs., supra* at 193 (automobile insurance industry has been "intensely regulated" and "an area of experiment, change, and reform"). A company in a heavily regulated industry is on notice that future legislation may adjust its position. See *Energy Reserves, supra* at 413 (impairment insubstantial in heavily regulated gas industry). The 1977 agreement between Nationwide and its agents itself reflects this extensive regulation of the industry, as it provides in one section that automobile insurance is "subject to changing laws, regulations, and conditions." Because the automobile insurance industry is intensely regulated, the element of reliance which is essential to Nationwide's argument on retroactivity is lacking.[8]

Third, G. L. c. 175, § 162D, is reasonable in the degree of its impairment of Nationwide's contract rights. The legislation does not affect commissions earned prior to the effective date of the act. The only year for which the commissioner's rate displaces Nationwide's 1977 contract is 1981. The act implicates at most the difference between the commissioner's rate (16.2%) and the contract rate (10.69%) for this one-year period.

---

[8] Nationwide argues that, although the automobile insurance industry had been extensively regulated prior to 1977, the Legislature had not previously regulated the commissions to be paid independent agents. However, the appropriate inquiry is whether the parties are operating in a heavily regulated *industry,* and not whether the specific contract right impaired had been subject to prior regulation. See *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.,* 459 U.S. 400, 413-414 (1983) (although at the time of contract State did not regulate natural gas prices specifically, its supervision of the industry was extensive and intrusive). Nationwide was on notice that its contract with its agents was subject to change, regardless of the fact that commission rates had not previously been regulated.

The judge properly concluded that the commissioner's 1981 rate decision could constitutionally be applied to Nationwide. However, the judge also ruled that Nationwide should not be subjected to this commission rate until the commissioner holds a hearing on Nationwide's expense base. Nationwide did not take part in the 1980 hearings leading up to the commissioner's 1981 rate decision. Nationwide argues that its lower commission rate is warranted in light of the extra-commission benefits — such as support services and training expenses — which the company provides to its exclusive agents. In support of its motion for summary judgment, Nationwide submitted the affidavit of Roy Croop, vice president and regional manager for Nationwide, which stated that Nationwide's expense base was greater than that of other companies. In light of the evidence, we conclude that the motion judge acted within his sound discretion in ordering the commissioner to hold a hearing prior to subjecting Nationwide to the 1981 rates.[9] There was no error.

*Judgment affirmed.*

[9] Neither the commissioner nor the agents challenge the power of the Superior Court judge to require a hearing on Nationwide's expense base. The sole issue before us is whether the judge abused his discretion in this regard.