APPEALS COURT 
 
 EMANUEL BRANDAO vs. BOSTON POLICE DEPARTMENT & another[1]

 
 Docket:
 23-P-1196
 
 
 Dates:
 November 5, 2024 - January 16, 2025
 
 
 Present:
 Vuono, Meade, & Hand, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Police, Probationary period, Tenure, Discharge. Civil Service, Decision of Civil Service Commission, Police, Probationary period. Public Employment, Termination. Practice, Civil, Judgment on the pleadings. Administrative Law, Agency's interpretation of regulation.
 
 

       Civil action commenced in the Superior
Court Department on August 16, 2019. 
      The case was heard by Robert B. Gordon,
J., on motions for judgment on the pleadings. 
      Bryan Decker for the plaintiff.
      James J. Megee, Assistant Corporation
Counsel, for Boston police department.
      MEADE, J. 
The plaintiff, Emanuel Brandao, appeals from a judgment on the pleadings
entered in the Superior Court affirming a decision of the Civil Service
Commission (commission) to uphold the Boston police department's (department's)
termination of the plaintiff's employment without the pretermination process
prescribed by G. L. c. 31, § 41. 
The plaintiff claims that the judge erred in his interpretation of
Personnel Administration Rule 12(2) (Par. 12[2]), which, if properly applied,
should have entitled the plaintiff to tenured status under G. L.
c. 31, § 61, and, consequently, the protections of § 41.  We affirm.
      Background.  On June 16, 2017, the plaintiff was sworn in
as a full-time police officer with the department.  On February 4, 2019, the department placed
the plaintiff on administrative leave while it investigated allegations of
misconduct levied against the plaintiff. 
On March 28, 2019, the department terminated the plaintiff's employment
due to the plaintiff's failure to properly secure his department-issued firearm
while off duty.  
      Pursuant to G. L. c. 31,
§ 41, tenured civil service employees are entitled to written notice and a
hearing prior to the termination of their employment.  The parties do not dispute that the plaintiff
did not receive such pretermination process. 
Rather, the disputed issue is whether the plaintiff had attained tenured
status at the time of his termination. 
Pursuant to G. L. c. 31, § 61, for a newly appointed
police officer to attain tenured status, the officer must "actually
perform the duties of [the] position on a full-time basis for a probationary
period[2] of twelve months . . . , except as otherwise provided
by civil service rule."
      Ordinarily, the plaintiff would have
completed the twelve months of active-duty police work necessary to attain
tenured status in June 2018.  However, at
the time the plaintiff was placed on administrative leave in February 2019, he
had been credited with only approximately 200 days of such work, as he had
taken two military leaves of absence during the course of his employment:  (1) from October 5, 2017, to November 14,
2017; and (2) from January 8, 2018, to December 27, 2018.  During the pendency of each leave of absence,
the department did not credit the plaintiff with time toward his statutory
probationary period.  As a result, the
department did not regard the plaintiff as a tenured employee at the time of
his termination.  
      Pursuant to G. L. c. 31,
§ 42, the plaintiff filed a complaint with the commission, arguing that
the department failed to provide the plaintiff with written notice of the
extension of his probationary period, as required by Par. 12(2), which operated
as an exception to the default tenure requirements of § 61.  Rather than providing the plaintiff with
written notice after each military leave of absence, prior to the commencement
of his employment, the department provided him with a copy of the Boston Police
Academy Rules and Procedures (department rules), which stated that the
statutory probationary period would not include "[t]ime spent on light
duty, worker's compensation, injured on duty leave, sick time, leaves of
absence, [and] administrative leave, or suspension."  The commission proceeded to dismiss the
plaintiff's complaint, concluding:  (1)
that the failure to provide written notice pursuant to Par. 12(2) does not
operate as an exception to § 61; and (2) regardless, the copy of the
department rules provided to the plaintiff satisfied the written notice
requirement of Par. 12(2).  Thereafter,
pursuant to G. L. c. 31, § 44, the plaintiff instituted
proceedings in the Superior Court for judicial review of the commission's
decision under G. L. c. 30A, § 14.  The judge affirmed the commission's decision
and granted the department's cross motion for judgment on the pleadings.  This appeal followed.
      Discussion.  The plaintiff claims that Par. 12(2) conditions
the department's authority to extend an employee's probationary period on the
department's providing written notice of such extension.  Therefore, the plaintiff's argument follows,
the department's purported failure to provide written notice of the extension
of his probationary period functioned as an exception to the default
requirement of § 61 that he had to complete twelve months of actual,
full-time police work before attaining tenured status.  We disagree.
      The traditional rules of statutory interpretation
apply to rules and regulations.  Cohen v.
Board of Water Comm'rs, Fire Dist. No. 1, S. Hadley, 411 Mass. 744, 748
(1992).  Accordingly, we apply to rules
and regulations the principle that "where . . . statutory
language is clear, it must be given its plain and ordinary meaning."  Nationwide Mut. Ins. Co. v. Commissioner of
Ins., 397 Mass. 416, 420 (1986).  It
therefore follows that, when "regulations are clear and unambiguous,"
we need not inquire into the unexpressed intent of the promulgating
agency.  See Cohen, supra at 749.  Moreover, we need not accord deference to an
administrative agency's interpretation of an unambiguous rule or regulation.  DeCosmo v. Blue Tarp Redev., LLC, 487 Mass.
690, 700 (2021).  A statute, and thus a
rule or regulation, is ambiguous if it is "capable of being understood by
reasonably well-informed persons in two or more different senses"
(citation omitted).  AT&T v.
Automatic Sprinkler Appeals Bd., 52 Mass. App. Ct. 11, 14 (2001).
      We conclude that Par. 12(2) is unambiguous.  Therefore, we need not look further than its
express terms, which must be given their plain and ordinary meaning.  See Nationwide Mut. Ins. Co., 397 Mass. at
420.  In full, Par. 12(2) states,
"[t]he probationary period may be extended by the appointing authority
beyond the period provided by law by the actual number of days of absence
during the statutory period; written notice of such extension shall be given to
the employee prior to the expiration of the statutory probationary period."  The plaintiff claims that the second half of
the rule, which establishes the obligation to provide written notice, operates
as a condition precedent to the first half of the rule, which provides for the
extension of the probationary period. 
Contrary to the plaintiff's assertion, the second half of the rule is
not preceded by conditional language such as "if" or "so long
as."  Nor does the rule specify that
the consequence of a failure to provide written notice would be to credit the
days of absence towards the employee's statutory probationary period.  See Massachusetts Mun. Wholesale Elec. Co. v.
Danvers, 411 Mass. 39, 46 (1991), quoting Commerce Ins. Co. v. Koch, 25 Mass.
App. Ct. 383, 385 (1988) ("'Emphatic words' are generally considered
necessary to create a condition precedent that will limit or forfeit rights
under an agreement").  
      The plaintiff's interpretation not only
lacks textual support, but actually reverses the conditional relationship of
the two halves of Par. 12(2).  The plain
meaning of Par. 12(2) is not that the department's authority to extend the
probationary period is dependent on the sending of written notice, but rather
that the obligation to send written notice is dependent on the extension of the
probationary period.  The word
"shall" establishes an obligation on the part of the department to
provide written notice,[3] but there is no grounding in the text of Par. 12(2)
for the inference that such obligation operates as a condition precedent to the
extension of the probationary period.[4]  Therefore, an appointing authority's failure
to provide written notice under Par. 12(2) does not preclude the tolling of a
civil service employee's statutory probationary period; it does not operate as
an exception "provided by civil service rule," G. L. c. 31,
§ 61, to the default requirement that a newly appointed civil service
employee actually perform the job duties on a full-time basis for twelve months
before attaining tenured status.
      We also note that the plaintiff's argument
runs counter to the purpose of G. L. c. 31, § 61.  As recognized by the judge, "[t]he
manifest purpose" of the statutory probationary period "is that the
fitness of an appointee be actually demonstrated by service within a
probationary period."  Younie v.
Doyle, 306 Mass. 567, 570 (1940). 
Indeed, in Police Comm'r of Boston v. Cecil, 431 Mass. 410, 414 (2000),
the Supreme Judicial Court noted that "[t]his purpose is designed to
benefit the public.  With respect to
police officers and fire fighters, in particular, the Legislature recognized
the special need of a prolonged probationary period . . .
."  (Quotation and citation
omitted.)  This is required because
"[c]ourage, good judgment, and the ability to work under stress in the
public interest and as part of an organization, are qualities that are not
quickly perceived.  The policy of the
statute is to ensure sufficient time for a careful determination whether they
are present in sufficient degree" (citation omitted).  Id. 
This, of course, could not occur if an officer was credited with time
during which he was not "actually perform[ing] the duties of" a
police officer.  G. L. c. 31,
§ 61.
      Notwithstanding the above, we conclude
that the department provided written notice in compliance with Par. 12(2).  The plaintiff contends that, since Par. 12(2)
requires written notice of "such extension," and the actual number of
days of absence can only be known after the employee's absence has concluded,
the written notice must necessarily (1) be provided postabsence; and (2) numerically
express the number of days of the extension. 
These inferences lack support from the unambiguous text of Par. 12(2),
which must be given its plain and ordinary meaning.  See Nationwide Mut. Ins. Co., 397 Mass. at
420.  The sole temporal limitation
imposed by Par. 12(2) is that written notice must be provided "prior to
the expiration of the statutory probation period."  While the written notice must be one of
"such extension," which refers to an extension of the probationary
period equal to the actual number of days of absence, Par. 12(2) does not
specify that the written notice must communicate the duration of the extension
through a numerical figure, as opposed to a formula.  In the absence of such a requirement, we conclude
that an appointing authority may provide written notice of "such
extension" by communicating:  (1)
the circumstances that will trigger an extension; and (2) under such
circumstances, the method or formula for ascertaining the duration of the
extension.  Such written notice may be
provided in advance of an employee's leave of absence. 
      Here, the department provided the
plaintiff with a copy of the department rules, which stated that the statutory
probationary period would not include time spent on leaves of absence.  Stated differently, the department rules
communicated that (1) a leave of absence would trigger an extension of the
probationary period; and (2) the duration of the extension would be equal to
the duration of the leave of absence. 
The plaintiff had sufficient information regarding the extension:  he knew that each leave of absence would
trigger an extension, he knew that the duration of each extension would be
equal to the duration of each leave of absence, and he knew the duration of his
leaves of absence.  The department rules
provided by the department to the plaintiff constituted sufficient written
notice under Par. 12(2); the plain language of the rule requires nothing more.
      Conclusion.  For the reasons set forth above, we affirm
the allowance of the defendants' cross motion for judgment on the pleadings.
Judgment
affirmed.

footnotes

[1] Massachusetts
Civil Service Commission.

[2] The term
"probationary period" is used differently in § 61 and Par.
12(2).  In § 61, the term refers to
twelve months of actual, full-time performance of job duties.  We will refer to this as the "statutory
probationary period."  In Par.
12(2), "probationary period" refers to the period of time in which
the statutory probationary period is completed. 
We will refer to this as the "probationary period."  In accordance with these definitions, we note
that the "tolling" of the statutory probationary period is
functionally equivalent to the "extension" of the probationary
period.       

[3] "It is
axiomatic in statutory construction that the word 'shall' is an
imperative."  School Comm. of
Greenfield v. Greenfield Educ. Ass'n, 385 Mass. 70, 81 (1982).

[4] The plaintiff
also claims that the judge erred in departing from a prior decision of the
commission purportedly interpreting the written notice requirement of Par.
12(2) as a condition precedent to an appointing authority's ability to extend
an employee's probationary period.  We
disagree.  Where, as here, the meaning of
a rule is unambiguous, deference to an agency's interpretation (much less a
prior interpretation) is not appropriate. 
DeCosmo, 487 Mass. at 700.