RONALD COSTA & others[1] *vs.* BOARD OF SELECTMEN OF BILLERICA.

Middlesex. February 9, 1979. — April 17, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Police,* Termination during probationary period. *Civil Service,* Notice of termination. *Notice,* Termination of employment.

Notices of termination of probationary employees which described in general terms negative traits or aspects of the probationer's conduct or capacity or of the character or quality of his work which led to the decision to terminate were adequate to meet the requirements of G. L. c. 31, § 20D. [857-861]

CIVIL ACTION commenced in the Superior Court on January 21, 1976.

The case was heard by *Brogna,* J., on a master's report.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Edward J. Owens* for the defendant.

*Kevin P. Phillips* (*Frank J. McGee* with him) for the plaintiffs.

*D. M. Moschos & Linda R. Rodgers,* Special Assistant City Solicitors, for the city of Worcester, amicus curiae, submitted a brief.

KAPLAN, J. In November, 1974, the town of Billerica needed a fresh complement of twelve "permanent inter-

---

[1] Anthony Ricciotti and Anthony Lombardo.

mittent" police officers, that is, officers with tenured status but working only on such days as they might be called, and compensated accordingly. The board of selectmen (board) of the town, as appointing authority, applied to the Massachusetts Division of Personnel Administration for a list of eligibles, and from the list on March 5, 1975, it appointed twelve persons as probationers. Again in June, 1975, the board applied for a list, and from it on July 1 appointed eight persons in like probationary intermittent status. On November 3, 1975, the police department recommended accepting ten of the probationers for tenure as intermittent police officers, postponing action on two, and "terminating" six. (Two had resigned.) Among the six terminated were the present three plaintiffs, who had been appointed from the earlier list. On November 26, the three received notices of termination. The record does not show how many days the plaintiffs respectively had in fact served: the statute indicated that an intermittent employee on probation might be terminated within the nine months following his appointment, provided he had actually worked not less than thirty days, which need not have been consecutive.[2] Here the terminations occurred nine days before the nine months would run.

These plaintiffs (and one other, not now before the court[3]) commenced the present action against the board

[2] General Laws c. 31, § 20D, as it had been amended by St. 1968, c. 93, provided that the probationary period for regular police officers was to be nine months; for other civil servants, it remained six months. An amendment in 1971 (St. 1971, c. 182, § 2) provided that if, at the close of either period, a part time probationer had not been employed for thirty days "or the equivalent thereof," the probationary time could be extended to eighteen months, and if, after the extension, thirty days or the equivalent still had not been served, the appointment was to become permanent. Chapter 31 was recodified by St. 1978, c. 393, § 11. See note 4 infra. The period of probation for police officers had been extended to twelve months by St. 1976, c. 62, and this was carried into the recodification. The eighteen-month rule was retained and made more explicit by § 34 of the recodification.

[3] The fourth plaintiff, Daniel Turco, was terminated because of his

for declaratory and other relief, claiming sundry breaches of law in their termination. The case was referred to a master, on whose report a judge of the Superior Court entered judgment for the board. We need not describe the record that was made, beyond saying that, other contentions of the plaintiffs as to alleged abusive action by the board having been unavailing, the issue reduced to whether the notices of termination complied in their terms with the then governing statute regarding probationary employees. The master and the judge found that they did. On appeal, the Appeals Court reversed. *Costa* v. *Selectmen of Billerica*, 6 Mass. App. Ct. 516 (1978). (It appears, although not with entire clarity, the result would be that, on remand, the board would have nine days in which to attempt to amend the notices, failing which, the plaintiffs would become tenured.) The case is here for further appellate review. 376 Mass. 935 (1978). We hold that the decision of the Superior Court should be affirmed.

We set out the substance of the letters of termination dated November 26, 1975, sent to these plaintiffs. The reasons for termination in the case of Costa were stated to be: "your inability to handle routine calls and cooperate with and gain the cooperation of fellow officers." As to Ricciotti: "your inability to answer calls and take proper police action and failure to follow lawful orders of commanding officers." As to Lombardo: "inability to work in harmony with fellow police officers and lack of

refusal of twenty-nine out of thirty-six details offered to him, as well as his "failure to perform tasks assigned by commanding officers as exemplified by not remaining in [his] assigned sector." The statute then in force provided for termination upon refusal by a part-time probationary employee of three assignments without satisfactory reason given. The appointing authority was required to supply written notice "setting forth the occasion of such refusal or refusals . . . ." G. L. c. 31, § 20D, as amended by St. 1971, c. 182. The Appeals Court affirmed the judgment of the Superior Court upholding Turco's termination. *Costa* v. *Selectmen of Billerica*, 6 Mass. App. Ct. 516, 520 (1978).

aggressiveness necessary to the performance of police functions." The terms of these notices are to be seen in the light of G. L. c. 31, § 20D, as it stood at the time (now superseded through the recodification of c. 31 by St. 1978, c. 393, § 11[4]), which stated in its second paragraph that "[i]f the conduct or capacity of a person serving a probationary period . . . or the character or quality of the work performed by him, is not satisfactory to the appointing authority, he [the authority] may . . . give such person a written notice to that effect, stating in detail the particulars wherein his conduct or capacity or the character or quality of his work is not satisfactory, whereupon his service shall terminate."[5] Of each of the notices given, it may be said that it described negative traits or aspects of the person's conduct or capacity or of the character or quality of his work which led to the conclusion to terminate. It did not set out any specific incidents or episodes. In none of the cases was there a suggestion of culpable misconduct.

[4] For the recodified provisions dealing with probationary employees, see new G. L. c. 31, § 61 (police and firefighters), § 34 (other probationers). Because of the textual alterations and rearrangements, we refrain from commenting on how the material issue in the present case would be handled under the recodified law.

[5] The full text of the second paragraph of § 20D read thus: "If the conduct or capacity of a person serving a probationary period under an appointment in the official service or labor service, or the character or quality of the work performed by him, is not satisfactory to the appointing authority, he may, at any time after such person has served thirty days and prior to the end of such probationary period, give such person a written notice to that effect, stating in detail the particulars wherein his conduct or capacity or the character or quality of his work is not satisfactory, whereupon his service shall terminate. The appointing authority shall at the same time send a copy of such notice to the director. In default of such a notice, the appointment of such person shall become permanent upon the termination of such period; provided, however, that the director, with the approval of the commission, may establish procedures assuring the evaluation by appointing authorities of the performance of police officers during such probationary period."

A requirement that the appointing authority assign an explanation for terminating a probationary employee first appeared in our civil service system in 1945,[6] but we have never had occasion to discuss how detailed the explanation under § 20D had to be in given situations. The case of *Scott* v. *Manager State Airport, Hanscom Field,* 336 Mass. 372 (1957), indicated that the employee could complain of the "legal insufficiency" (at 376) of a § 20D notice, but the question what qualified as sufficient did not arise: as it happened, the notice stated that the probationary watchman had refused to do cleaning work which the employer understood to be part of the job, but it also mentioned as a reason "your general uncooperative attitude" (at 375). The case of *Thibeault* v. *New Bedford,* 342 Mass. 552 (1961), decided that a statement in a § 20D notice that the probationary employee had suffered a heart attack, and consequently absented himself from work, was related to "capacity" and was thus a legitimate basis for termination; there was no issue regarding the degree of detail of the notice.

In this dearth of authoritative interpretation, the Appeals Court adopted the view, as we understand it, that the specificity in notices of termination of employees on

---

[6] Before the enactment of § 20D by St. 1945, c. 703, § 2, a probationary employee could be terminated without any assignment of a reason; the procedural requirements of § 43 (mentioned later in our text) did not extend to such employees. See *Scott* v. *Manager State Airport, Hanscom Field,* 336 Mass. 372, 376 (1957); *Clement* v. *Selectmen of Westwood,* 316 Mass. 481 (1944). That probationers could not complain of terminations without stated reasons or of the character of reasons given, see *Crimmins* v. *Highway Comm'n of Brockton,* 304 Mass. 161, 163 (1939); *Gibney* v. *Mayor of Fall River,* 306 Mass. 561, 566 (1940). For the background of the 1945 changes, see Report of the Special Recess Commission Studying Civil Service Laws, Rules and Regulations, 1945 House Doc. No. 1675. Under the 1945 legislation, termination could be only for stated reasons, but, in general (compare nn.15-17 below), if the notice assigned a proper reason, the employee could not dispute its truth, and the appointment terminated. See *Scott, supra* at 376; Report, *supra,* app. G. Plainly probationers were not entitled to the benefits of § 43. See *Scott, id.; New Bedford* v. *Civil Serv. Comm'n,* 6 Mass. App. Ct. 549, 551-552 (1978).

probation under § 20D must be "as stringent" (indeed the expression used was "at least as stringent") as that required in the "specific" reasons that had to be assigned to support a charge of "just cause" for firing a tenured civil servant under the provisions of G. L. c. 31, § 43. And apparently this would, according to the court, usually call for a recital of the incidents relied on.

Typical cases under § 43 involved accusations of fault and these could, as that section provided, be defended against in hearings before the appointing authority, with a course of possible administrative and judicial review through the Civil Service Commission and a hierarchy of courts.[7] The fact that a probationary employee, termin-

---

[7] Section 43(a), as amended through St. 1970, c. 72, § 1, provided: "Every person holding office or employment under permanent appointment in the official or labor service of the commonwealth, or of any county, city or town thereof, shall have unlimited tenure of office or employment, subject to the provisions of this chapter and the rules made thereunder. He shall not be discharged, removed, suspended for a period exceeding five days, laid off, transferred from such office or employment without his consent in writing if he held office or employment prior to October fourteen, nineteen hundred and sixty-eight, lowered in rank or compensation without his consent in writing, nor shall his office or position be abolished, except for just cause and for reasons specifically given him in writing. Before any action affecting employment or compensation referred to in the preceding sentence is taken, the officer or employee shall be given a written statement of the specific reason or reasons for the contemplated action, together with a copy of sections forty-three, forty-five and forty-six A, and shall be given a full hearing before the appointing authority on the specific reason or reasons given, of which hearing he shall have at least three days' written notice from the appointing authority, except in cases of separation from service in the official or labor service, resulting from lack of work or lack of money or from abolition of positions, in which case at least seven days' written notice of hearing shall be given by the appointing authority. Within two days after completion of said hearing, the appointing authority shall give to the employee affected a written notice of his decision, stating fully and specifically the reasons therefor."

Section 43 went on to state that, upon request, an employee was entitled to further review at a hearing before a member of the Civil Service Commission "or some disinterested person designated by the chairman of the commission." After decision in writing, the employee could seek judicial review in the Municipal Court of the City of Boston

ated pursuant to § 20D, was not provided by statute with a comparable channel of review, is offered in the opinion of the court below as a justification for demanding considerable particularity in the § 20D notice, and the possible values of such particularity are stressed.[8] But we suggest, with respect for that careful opinion, that such an approach minimizes the differences in the nature of the stated criteria—"just cause" for discharge under § 43, contrasted with a judgment of "not satisfactory" for termination under § 20D related to "conduct," "capacity," "character," "quality." Likewise it scants the functional differences between tenured and probationary employments which should also influence the meaning to be accorded to the sets of words in the respective sections of the law.[9]

A tenured employee has a right of property in his job. Under § 43 he could be charged with one or other kind of blame which, if proved, would result in loss of the proper-

or a District Court pursuant to § 45; and see § 46A allowing petition in the Supreme Judicial Court for a writ of mandamus to secure reinstatement.

For the parallel provisions of the recodified law, see G. L. c. 31, §§ 41-46.

[8] For instance, requiring articulation might induce greater reflection on the part of the appointing authority about its decision to terminate. Section 20D, however, made provision for the establishment of procedures for evaluation by appointing authorities of probationary police officers (see the text quoted at note 5 above). The record does not inform us whether such procedures were established.

[9] While the functional considerations mentioned would, in the usual case, look to more particularity for reasons assigned under § 43 than for those under § 20D, we think the nature of the given reason should also be considered a conditioning factor under either section. For example, as we suggest below, if an appointing authority chose to rely on culpable misconduct for a § 20D termination, it ought to be definite about the grounds.

For analogy, note the variability, dependent upon the context, of the application of a requirement that pleadings be particularized. See 5 C. A. Wright & A. R. Miller, Federal Practice and Procedure § 1298, at 410-415 (1969); cf. id. § 1377, at 755-760. See also Nagler v. Admiral Corp., 248 F.2d 319, 322-323 (2d Cir. 1957) (Clark, C.J.).

ty. Here there would be a constitutional claim to fair procedure, including information about the accusation against the employee sufficient in the circumstances to enable him to prepare to defend. On the other hand, a person on probation understands that he is in "a status of experimental testing" which "implies no commitment for continuance of employment." *Rhine* v. *International Young Men's Christian Ass'n College*, 339 Mass. 610, 613 (1959). In the usual situation under § 20D the probationer would not be charged with fault inviting defense. Rather the employer would have formed a judgment about the probationer's long-term potentiality which must be often if not invariably a comparative one, even when not expressed in that form,[10] and it would be compounded of subjective elements, notably so when the job is relatively sensitive. General impressions are a legitimate ingredient of the judgment: indeed, in the case of intermittent employment, the actual experience may be quite limited in time. The practical consequences to the probationary employee of adverse official action would usually be less serious than those attending discharge of a tenured employee, and in all events they have been tempered by the published rule of the Civil Service Commission that where a termination is "without fault or delinquency" during a probationary period, the person may, at his request within a year, have his name restored to the eligible list.[11] We must remember, finally, to take care not to

[10] As illustrative of the comparisons involved in a selective process, the plaintiffs' allegations in the present record show that the board in January, 1975, voted to hire twenty-one individuals from the eligible list as probationary intermittent police officers although the board needed to fill only twelve permanent slots. (As it happened, that eligible list was invalidated.)

[11] Rule 30 states: "Any person whose appointment has been legally made or authorized from the eligible list under the Civil Service Law and Rules, and whose service has been terminated without fault or delinquency on his part during the probationary period, may, upon his request made in writing within one year from the date of termination of his service, have his name restored to the said eligible list." Cf. Rep. A.G., Pub. Doc. No. 12, at 187 (1964).

hobble the employer unduly in the process of selection for tenure because dislodgment thereafter is notoriously difficult; the rigidities in removing unfit tenured employees which have led to attempts at Federal reform teach a lesson as to the pretenure period also.[12]

Responsive to the foregoing considerations, we read § 20D as rendering a notice insufficient which merely recited such a formula as "conduct unbecoming an officer," or "for the good of the service."[13] In the exceptional situation where an employer meant to charge a probationer with actual misconduct, we think a statement would be required of the incidents basing the charge.[14] In the middle range, we believe a notice was adequately particularized when it identified observed characteristics of the individual, related under the *Thibeault* case to one or more of the elements of "conduct," "capacity," and so forth mentioned in the statute, which grounded the conclusion "not satisfactory": we would not add a requirement of describing incidents or events, although there would surely be no objection to the appointing authority's citing them. The notices at bar fell in this range and we hold that they were adequate.

The present appeal deals only with the question of the allegations that must appear in the notice of termination. We observe that even when a notice is sufficient on its

---

[12] This point is urged forcefully in a brief submitted herein by the city of Worcester as a friend of the court.

See Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111-1227; the President's message to Congress on civil service reform, and committee reports on the act, appear at 95 U.S. Code Congr. & Adm. News (2d Sess.) 561, 4453.

[13] Compare *Beaumont* v. *Director of Hosps.*, 338 Mass. 25, 26 (1958), and *McKenna* v. *White*, 287 Mass. 495, 499 (1934), with *Ray* v. *Mayor of Everett*, 328 Mass. 305, 309 (1952), and *Ayers* v. *Hatch*, 175 Mass. 489, 492 (1900). See also *Bryant* v. *State Personnel Bd.*, 96 Cal. App. 2d 423 (1950); *Brown* v. *State Personnel Bd.*, 43 Cal. App. 2d 70 (1941).

[14] Cf. *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755 (1976). See n.15 below.

face, the employee, although probationary, may be entitled to a fair procedure for challenging allegations that set a mark of disgrace or infamy upon him.[15] So also he may be entitled to establish to the satisfaction of a court that the allegations of a notice are a mere pretext masking unconstitutional motives for the termination.[16] To what extent, apart from demonstrating such unconstitutional motivation, he may be permitted to show that the true reason for a termination was not within the statute, although the allegations of the notice were within it, we need not undertake to say.[17] Confining ourselves to the formal question, we affirm the judgment of the Superior Court.

*So ordered.*

---

[15] See *Codd* v. *Velger,* 429 U.S. 624, 627-628 (1977); *Regents of State Colleges* v. *Roth,* 408 U.S. 564, 573-574 (1972); *Stetson* v. *Selectmen of Carlisle, supra* at 763-764.

[16] See *Mt. Healthy City School Dist. Bd. of Educ.* v. *Doyle,* 429 U.S. 274, 283-284 (1977); *Perry* v. *Sindermann,* 408 U.S. 593, 597 (1972). Cf. *McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792, 804-806 (1973).

[17] See *New Bedford* v. *Civil Serv. Comm'n,* 6 Mass. App. Ct. 549-552 (1978). Cf. *In re Talamo* v. *Murphy,* 38 N.Y.2d 637, 639 (1976). See also *Canney* v. *Municipal Court of the City of Boston,* 368 Mass. 648, 652-656 (1975).