CITY OF LEOMINSTER *vs*. INTERNATIONAL BROTHERHOOD
OF POLICE OFFICERS, LOCAL 338, & another.[1]

No. 91-P-19.

Worcester. May 8, 1992. - July 31, 1992.

Present: KASS, GILLERMAN, & GREENBERG, JJ.

*Police*, Probationary period. *Public Employment*, Termination, Collective
   bargaining. *Arbitration*, Authority of arbitrator. *Municipal Corpora-
   tions*, Collective bargaining, Police. *Contract*, Collective bargaining
   contract.

Whether an arbitrator under a collective bargaining agreement exceeded
   his authority was a question of law, subject to judicial review. [123-
   124]
A collective bargaining agreement that imposed a "just cause" standard
   for discharge of probationary municipal employees was in direct and
   substantial conflict with, and thus yielded to, provisions of G. L. c. 31,
   § 34, setting the terms of the probationary period for such employees;
   hence, in a grievance proceeding with regard to the discharge of a pro-
   bationary police officer, the arbitrator exceeded his authority by enter-
   ing an award that enforced the agreement. [124-128]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 11, 1989.

The case was heard by *Robert J. Hallisey*, J.

*Gregory J. Angelini* for the plaintiff.

*Donna DeSimone Buckley* for the defendants.

GILLERMAN, J. The question to be decided is whether an
arbitrator exceeded his powers in ruling that the discharge,
after proper notice, of a civil service police officer serving the
required probationary period of twelve months[2] was an arbi-
trable issue, and that the city of Leominster was required to

---

[1]Diane Yakusik.

[2]The probationary period for police and fire fighters is twelve months,
G. L. c. 31, § 61; the probationary period for all other civil service em-
ployees is six months, G. L. c. 31, § 34.

show "just cause" for its action. The "just cause" discharge standard, upon which the defendants rely, appeared in the collective bargaining agreement (the agreement) between the city and the defendant International Brotherhood of Police Officers, Local 338 (the union). However, the civil service statute setting the terms of the probationary period, upon which the city relies, provides that the appointing authority may terminate the services of a probationary employee "[i]f the conduct or capacity of a person serving a probationary period, or the character or quality of the work performed by him is not satisfactory to the appointing authority." See G. L. c. 31, § 34, fifth par. (1986 ed.). In addition to provisions for the final and binding arbitration of grievances "to the extent permissible by law," see G. L. c. 150E, § 8,[3] the agreement provided that the "arbitrator shall be without power to make any decisions in conflict with the laws of the Commonwealth of Massachusetts. . . ."

The controversy arose out of the following undisputed facts. Diane Yakusik (the defendant) was appointed a full-time, civil service police officer on January 19, 1987. One month prior to the expiration of her twelve-month probationary period the city terminated the defendant's services for allegedly unsatisfactory performance.[4,5]

---

[3]General Laws c. 150E, § 8, provides that collective bargaining agreements covering public employees may provide for binding arbitration notwithstanding any contrary provision in various enumerated statutory provisions. General Laws c. 31, § 34, is not among the enumerated statutes, from which we conclude, contrary to the argument of the defendants, that G. L. c. 150E, § 8, is not dispositive of this controversy. See *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. 557, 566 (1983).

[4]The termination was effected by written notice to the defendant. See G. L. c. 31, § 34. The notice stated in detail the deficiencies in the conduct and the work of the defendant. See note 5, *infra*. The defendant makes no claim (so far as appears in the record) that the notice was in any respect "a mere pretext masking unconstitutional motives for the termination." *Costa* v. *Selectmen of Billerica*, 377 Mass. 853, 862 (1979). Nor is there any claim that the notice failed to comply with the statutory technicalities. Notice of termination to a probationary employee must state the "particulars" supporting the discharge. It may not be given before the person has served thirty days, G. L. c. 31, § 34, nor, in the case of a police

The union filed a grievance with regard to the defendant's discharge, the claim being that the termination was without just cause. The grievance was processed in the required manner, and in due course an arbitrator, in response to the issues put to him,[6] announced his award. He concluded that the grievance was arbitrable, and that the city had violated the agreement by discharging the defendant without just cause.

The city then commenced these proceedings to vacate the award on the ground that the arbitrator had exceeded his powers. See G. L. c. 150C, § 11(*a*)(3). The union moved to confirm the award, and the judge, finding no conflict between the agreement and any law of the Commonwealth, allowed the union's motion. The city appealed.

An additional statutory provision similar to that referred to in note 3, *supra*, is important to an understanding of this controversy. General Laws c. 150E, § 7(*d*) (1986 ed.), provides, in brief, that if a collective bargaining agreement covering public employees "contains a conflict" between the provisions of the agreement and any law of the Commonwealth which is enumerated in subsection (*d*), then "the terms of the collective bargaining agreement shall prevail." Chapter 31 is not one of the laws identified in subsection (*d*).

1. *Judicial review.* The Superior Court is required, upon the application of any party, to vacate an award if "the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law." G. L. c. 150C, § 11(*a*)(3), inserted

---

officer or fire fighter, after the expiration of twelve months from the commencement of full-time service. G. L. c. 31, § 61.

[5]The written notice to the defendant, after reciting the dates and circumstances of specific events, concluded, in part, that the defendant had "consistently demonstrated conduct unbecoming an officer, and [she] has been discourteous to her superior officers, fellow officers and to members of the public. She has abused department property and has not been able to competently perform the duties as a police officer after almost one year of experience."

[6]The brief filed by the city states that the city reserved "all defenses" in stipulating the issues to be arbitrated. The brief filed by the defendants does not controvert this assertion, and therefore we accept the representation of counsel.

by St. 1959, c. 546, § 1. Whether, given the facial conflict between the agreement and G. L. c. 31, § 34, the arbitrator exceeded his powers by deciding that the defendant's discharge was an arbitrable issue is subject to our review. See *Fall River* v. *Teamsters Union, Local 526,* 27 Mass. App. Ct. 649, 651 (1989). The agreement itself yields the same result, for it provides, as we noted above, that the arbitrator "shall be without power" to make any decision which conflicts with the laws of the Commonwealth. An arbitrator exceeds his powers if the parties to the agreement never gave the arbitrator the power to make the award he made. *Morceau* v. *Gould-National Batteries, Inc.,* 344 Mass. 120, 124 (1962).

2. *Validity of the award.* The straightforward argument of the defendants (the union and Yakusik) is that there is no statutory bar to a provision in the collective bargaining agreement for a "just cause" discharge standard for probationary employees.[7] The defendants concede that if there were a conflict between the civil service law and the agreement, the civil service law would prevail, but they contend that there is no such conflict in this case. The civil service law, the defendants argue, does not prohibit an employer from conferring greater rights on its employees than are available through the civil service law. We conclude that the argument cannot prevail; there is a direct and substantial conflict between the agreement and G. L. c. 31, § 34, and the agreement must yield to the statute.

Despite earlier intimations that the absence of a statute from the list of laws enumerated in G. L. c. 150E, § 7(*d*), revealed the intention of the Legislature that a collective bargaining agreement must yield to that statute, see *School Comm. of Danvers* v. *Tyman,* 372 Mass. 106, 109 (1977), more recent decisions of the Supreme Judicial Court and this court have focused on the question whether there exists a material conflict between the agreement and the unenumer-

---

[7]Article I of the collective bargaining agreement defines the bargaining unit as consisting of "all employees of the Leominster Police Department" with certain exceptions not material to this case.

ated statute. In the absence of a material conflict with a statute not enumerated in § 7(*d*), the agreement may be enforced. See *Rooney* v. *Yarmouth*, 410 Mass. 485, 493 n.4 (1991) (G. L. c. 41, § 108L, an incentive pay program for police officers not enumerated in § 7[*d*], did not "conflict" with the collective bargaining agreement). *Fall River* v. *Teamsters Union, Local 526*, 27 Mass. App. Ct. at 651 (with respect to a choice between qualified applicants for a provisional appointment, the civil service law does not "crowd out" a seniority clause in a collective bargaining agreement; award confirmed). Compare *Massachusetts Org. of State Engrs. and Scientists* v. *Commissioner of Admn.*, 29 Mass. App. Ct. 916, 917 (1990) (entrance requirement of four years' experience set by personnel administrator, pursuant to his authority under the civil service law, could not be modified by the collective bargaining agreement; judgment vacating the award affirmed).

In this case, we must decide whether a "just cause" standard for the discharge of a person serving during the probationary period materially conflicts with the provisions and underlying purpose of the civil service statute creating a probationary status. As noted above, G. L. c. 31, § 34, fifth par., provides that if the conduct or the character of the person serving a "probationary period," or the quality of his or her work, is "not satisfactory to the appointing authority," notice of termination may be given. The term "probationary" must be taken in its usual and ordinary sense. See *Martin* v. *Rent Control Bd. of Cambridge*, 19 Mass. App. Ct. 745, 747 (1985). "In ordinary connotation, the word indicates a status of experimental testing of the employee. It certainly implies no commitment for continuance of employment, if for any reason the experimental relationship leads to the conclusion that a more extended relationship may be unsatisfactory." *Rhine* v. *International Young Men's Christian Assn. College*, 339 Mass. 610, 613 (1959). So, too, "probation" is defined to mean "a trial period in which a person's fitness for membership in a working . . . group is tested." The American Heritage Dictionary 987 (2d College ed.).

This "experimental testing" of the fitness of an employee during a "trial period" is to be contrasted with the attributes of a tenured employee. "A tenured employee has a right of property in his job." *Costa* v. *Selectmen of Billerica*, 377 Mass. 853, 859 (1979). He or she has a constitutional claim to fair procedure if charged with conduct that could result in the loss of position. *Id.* at 860. Fair procedure includes the requirement, by virtue of c. 31, § 41, that a tenured employee cannot be discharged except for "just cause." This means "substantial misconduct which adversely affects the public interest by impairing the efficiency of the public service." *Murray* v. *Second Dist. Ct. of E. Middlesex*, 389 Mass. 508, 514 (1983).

In *Costa* v. *Selectmen of Billerica*, *supra*, the court, in rejecting the argument that the notice of termination to a probationary employee must be sufficient to support a charge of "just cause" for the discharge, pointed out that it was error to "minimize[] the differences in the nature of the stated criteria — 'just cause' for discharge under § 43 [and § 41], contrasted with a judgment of 'not satisfactory' for termination under § 20D [predecessor to §34] related to 'conduct,' 'capacity,' 'character,' 'quality.' Likewise, it scants the functional differences between tenured and probationary employments. . . ."

The argument of the defendants would obliterate the statutory distinctions between tenured employees and probationary employees, and transform all probationary employees into tenured employees.[8] A probationary period of employment would no longer be an experimental testing of fitness during a trial period; proof of serious misconduct would be required for a discharge whenever the collective bargaining agreement so provides. Section 34 would become an optional

---

[8]That is not the scheme of things in the civil service law, which preserves the difference between employees on probation and those who are tenured. See, e.g., G. L. c. 31, § 6C, which grants to a tenured employee, but not to a probationary employee, certain rights in the event of disagreement with his or her evaluation.

provision which the city and the bargaining representative may then elect or discard.

Section 34 is a mandatory provision designed to benefit the public, which the city may not waive. With respect to police officers and fire fighters, in particular, the Legislature recognized the special need of a prolonged probationary period by extending the period from six months to one year. See St. 1977, c. 438, and now G. L. c. 31, § 61. Courage, good judgment, and the ability to work under stress in the public interest and as part of an organization, are qualities that are not quickly perceived. The policy of the statute is to ensure sufficient time for a careful determination whether they are present in sufficient degree.

This need for a subjective judgment by an experienced person of what is satisfactory performance is inconsistent with the need to establish serious misconduct. Prognosticating satisfactory character and work performance is the essence of judging a probationary employee, but that has nothing whatsoever to do with the discharge of a tenured civil service employee for serious misconduct. "We must remember, finally, to take care not to hobble the employer unduly in the process of selection for tenure because dislodgment thereafter is notoriously difficult. . . ." *Costa* v. *Selectmen of Billerica*, 377 Mass. at 860-861.

We conclude that the collective bargaining agreement, by imposing a "just cause" standard for the discharge of probationary employees, directly and substantially conflicts with the provisions of § 34, which calls for an experimental testing of fitness during a trial period. The agreement must yield to the statute with which it conflicts, and the arbitrator, by entering an award that enforced the agreement, exceeded his

powers.[9] There was no arbitrable issue,[10] and the award must be vacated.[11]

The judgment is reversed, and a new judgment is to be entered vacating the award of the arbitrator.

*So ordered.*

---

[9]As noted earlier in this opinion, under the terms of the collective bargaining contract, art. 8, § 5, the arbitrator had no power to make any decision "in conflict with the laws of the Commonwealth of Massachusetts. . . ."

[10]Absent any claim that the notice of termination was defective, see note 4, *supra*, the "notice must be taken as final on the facts. . . ." *Scott* v. *Manager State Airport, Hanscom Field*, 336 Mass. 372, 376 (1957).

[11]We have reviewed the group of cases involving teachers which were cited by the defendants. See, e.g., *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106 (1977). None of the cases cited involves a material conflict between the collective bargaining agreement and, as here, a mandatory and explicit statutory provision such as G. L. c. 31, § 34.