SCHOOL COMMITTEE OF NATICK vs. EDUCATION ASSOCIATION
OF NATICK.

Middlesex. April 2, 1996. - June 20, 1996.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*School and School Committee,* Termination of employment, Tenure of
personnel, Athletic coach, Superintendent of schools, Collective bargain-
ing, Arbitration. *Contract,* Collective bargaining contract. *Statute,*
Construction. *Arbitration,* School committee, Arbitrable question,
Authority of arbitrator.

General Laws c. 71, § 47A, limiting the term of a public school athletic
coaching appointment to a three year maximum and proscribing tenure
for such positions, rendered unenforceable through arbitration any pro-
vision of a collective bargaining agreement between a school committee
and a teacher's union purporting to confer just cause protection and de
facto tenure on such a coach. [36-41]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 23, 1994.

The case was heard by *Robert Malcolm Graham,* J., on a
motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Ira Fader* for the defendant.

*Duane R. Batista* for the plaintiff.

GREANEY, J. We transferred this case to this court on our
own motion to determine whether a decision by a school su-
perintendent not to renew the stipendiary appointment of a
teacher to a position as baseball coach was subject to arbitra-
tion under the terms of a collective bargaining agreement.
The plaintiff, the school committee of Natick (school commit-
tee), filed a complaint in the Superior Court seeking an order
to stay arbitration with respect to the grievance brought by
the defendant, the Education Association of Natick (union).
The union filed a counterclaim, seeking an order that the par-

ties proceed to arbitration.[1] A judge in the Superior Court ruled that the grievance was not arbitrable, and granted the school committee's motion for summary judgment. See Mass. R. Civ. P. 56 (a), 365 Mass. 824 (1974). The union appealed from the judgment, see *Old Rochester Regional Teacher's Club* v. *Old Rochester Regional Sch. Dist. Comm.*, 398 Mass. 695, 696 (1986), which we now affirm.

The materials submitted by the parties reveal the following material facts. The school committee and the union are parties to a collective bargaining agreement (agreement) which was in effect from September 1, 1991, through August 31, 1994. Article III, § 6, of the agreement provided, in pertinent part, as follows:

"No teacher will be disciplined, reprimanded, reduced in compensation, suspended, demoted, dismissed or nonrenewed without just cause.

"Notwithstanding anything to the contrary in this Agreement, no grievance involving an alleged failure to appoint a person to a promotional or stipendiary position or to not renew the contract of a non-tenured teacher or non-tenured administrator shall be arbitrable."

"Grievance" was defined in the agreement, in art. VIII, § 2(a), to include "a dispute involving the meaning, interpretation or application of [this agreement]." In the terminology of the agreement, a coaching position is a "stipendiary position."

The grievant has been a teacher in the Natick public schools since the 1970-1971 school year. According to his affidavit, the grievant was "initially appointed as Head Coach of the Natick High School Baseball Team in 1991 for the 1991-92 school year, and . . . was renewed to that appointment in 1992 for the 1992-93 school year." He anticipated that he

---

[1]The dispute between the parties concerned arbitration of two grievances. One grievance concerned a principal's mid-year withdrawal of a teacher's appointment to a stipendiary position as advisor to a student yearbook. The judge ordered the parties to proceed to arbitration on this grievance. There has been no appeal from that portion of the judgment, and we do not refer to it further.

would remain in the position for the 1993-1994 school year. On or about December 13, 1993, the grievant received a letter from the school superintendent, informing him that the superintendent did not "intend to reappoint [him] to the position of head coach of the Natick High School baseball team" for the 1994 season, because the grievant had "experienced two consecutive unimpressive seasons as head coach," and because of the grievant's "negative attitude regarding the 1993 season as expressed in the 'write up' [the grievant] prepared for the [Natick High School] 1993 yearbook."

The record indicates that the practice in Natick has been to make annual appointments and reappointments to the various coaching positions.[2] Prior to passage of the Educational Reform Act, St. 1993, c. 71 (Act), a coaching appointment was the prerogative of the local school committee. See G. L. c. 71,§ 47A (1992 ed.). The Act transferred the authority to make coaching appointments to school superintendents. See St. 1993, c. 71, § 50, amending G. L. c. 71, § 47A. The superintendent's letter to the grievant, declining to reappoint him, was sent pursuant to G. L. c. 71, § 47A, as amended, on the basis of the superintendent's newly assumed statutory responsibility for the appointment of athletic coaches.

The union construes art. III, § 6, of the agreement to provide that, while the initial decision to appoint a person to a coaching position is nonarbitrable, once such an appointment has been made, an incumbent coach (at least if that coach is also a teacher) is entitled to remain in a coaching position, subject to dismissal or nonrenewal only for just cause.[3] Furthermore, the union contends, the nonrenewal of the

[2]The union contends that there is no conclusive evidence on this point. This assertion is not born out by the record. Included in the record is a 1991 arbitrator's decision resolving a dispute concerning the appointment of the head coach for the Natick High School boys' spring track team. In that decision, the arbitrator observed that both parties, the union and the school committee (who are also the same parties now before us), acknowledged that "coaching is an annual appointment." The grievant's affidavit states that he was first appointed to the coaching position at issue in 1991, and that he was "renewed to that appointment" in 1992. In other words, the grievant was reappointed to the position for a second year. The arbitrator also found that historically, once an appointment as coach was made, the incumbent reasonably could expect reappointment (or renewal) to the position "until something happened to change that."

[3]In support of its position that the just cause provision of art. III, § 6, applies to the nonrenewal of a coaching position, the union points to the

grievant to the coaching position has a disciplinary aspect which, under art. III, § 6, is a proper subject of arbitration, because a teacher may not be disciplined without just cause. The judge agreed with the union that art. III, § 6, did not unambiguously exclude from arbitration the nonrenewal of a teacher to a stipendiary position. The judge nonetheless declined to order arbitration of the grievance on the ground that, under G. L. c. 71, § 47A, as amended, the superintendent had nondelegable managerial authority with respect to the appointment and reappointment of an athletic coach and, therefore, even if the agreement did grant to an arbitrator the right to decide whether an athletic coach is entitled to reappointment, such an agreement would not be enforceable. We agree with the latter conclusion.

As amended, G. L. c. 71, § 47A, reads as follows:

"The superintendent may contract to employ athletic coaches for periods not in excess of three years. The provisions of section forty-one relative to tenure shall not apply to such athletic coaches, unless they are otherwise entitled to tenure."

Section 67 of St. 1993, c. 71, made the provisions of the Act applicable to all cities, towns, and regional school districts "without regard to any acceptance or appropriation by a city, town, or regional school district."[4]

Contrary to the union's contention, we conclude that, under G. L. c. 71, § 47A, as amended, a teacher may not hold a stipendiary coaching position subject to dismissal or nonrenewal only for just cause. Section 47A is relatively clear as to its intent. The statute provides that a superintendent may

use of the word "non-renewal" in the just cause provision. According to the union, because "non-renewal" in the just cause provision cannot apply to nontenured teachers, who clearly are not entitled to its protection, the only category of persons to whom it could apply are teachers who have been appointed to stipendiary positions. Thus, the union contends, once a teacher has been appointed to a stipendiary position, the teacher is entitled to renewal to the position unless just cause exists for nonrenewal. The judge also noted that the clause covering stipendiary positions refers only to a failure to appoint, while the subsequent clause, covering nontenured teachers, refers with specificity to the nonrenewal of a contract.

[4]The only amendment to G. L. c. 71, § 47A, by the Act, St. 1993, c. 71, § 50, was the change from the word "committee" (i.e., school committee) to the word "superintendent."

enter into a contract for the services of an athletic coach. Such a contract may have a maximum length of three years, or it may be of more limited duration. The intent of the Legislature that such contractual commitments not be made on a more permanent basis is further emphasized by the explicit declaration that an appointment as coach to an athletic team of a public school shall not give rise to tenure for a person so appointed unless he or she is otherwise entitled to tenure.

This court and the Appeals Court have observed that any employee who is covered by a "just cause" provision in a collective bargaining agreement, in effect, has obtained tenure in the position. See *Massachusetts Coalition of Police, Local 165 v. Northborough,* 416 Mass. 252, 255 (1993); *Leominster* v. *International Bhd. of Police Officers, Local 338,* 33 Mass. App. Ct. 121, 125-126 (1992); *Selectmen of Ayer* v. *Sullivan,* 29 Mass. App. Ct. 931, 932-933 (1990). An incumbent coach protected by a just cause provision would have to be reappointed indefinitely, unless just cause for his removal was demonstrated at a requested hearing. See *Massachusetts Coalition of Police, Local 165* v. *Northborough, supra.* It was observed in the *Northborough* decision that this result would conflict with a statutorily mandated, fixed term of appointment, which otherwise could be terminated at will (assuming no improper motive) at the expiration of the appointment by the appointing authority. *Id.*

The *Northborough, Leominster,* and *Ayer* cases concerned the appointment, pursuant to various statutory provisions, of municipal police officers. The union suggests that § 47A can be distinguished from the statutory provisions at issue in those cases because it "does not require the superintendent to contract with or appoint athletic coaches" and, it is contended, "does not establish terms of employment." For these reasons, according to the union, § 47A does not prohibit the employer from conferring a right to just cause protection through collective bargaining. We disagree. We are satisfied that, by limiting coaching appointments to a maximum of three years, the Legislature intended to establish a fixed term of employment, readily terminable at its conclusion. Section 47A confers discretion on a superintendent to the extent that it

does not require the appointment of a coach,[5] but the durational limit on such a decision, once made, is not discretionary. A collective bargaining agreement which conferred just cause protection, and de facto tenure, on a public high school coach would conflict with the durational limitation of § 47A. "General Laws c. 150E, § 7 (*d*) [1994 ed.], lists those statutes that are subordinated to collective bargaining agreements. General Laws c. [71, § 47A] is not among them. '[S]tatutes not specifically enumerated in § 7 (*d*) will prevail over contrary terms in collective bargaining agreements.' " *National Ass'n of Gov't Employees* v. *Commonwealth*, 419 Mass. 448, 452, cert. denied, 515 U.S. 1161 (1995), quoting *Commonwealth* v. *Labor Relations Comm'n*, 404 Mass. 124, 126 (1989). See *Burlington* v. *Labor Relations Comm'n*, 390 Mass. 157, 163 (1983). Thus, even if the agreement was found to be susceptible to an interpretation that covered the asserted grievance, a point we need not decide, arbitration of the grievance would be foreclosed. See *Massachusetts Coalition of Police, Local 165* v. *Northborough*, supra at 256.

The union contends that the limitations in § 47A should not be construed as an expression of legislative intent to reserve decisions on coaching appointments to the sole discretion of employers because the subject matter of § 47A is not a core concern of "educational policy." See, e.g., *School Comm. of Boston* v. *Boston Teachers Union, Local 66*, 378 Mass. 65, 69-73 (1979). We have discovered, in § 47A, an expressly stated legislative restriction on the appointment power of employers that is in itself an adequate response to this contention. See *Massachusetts Highway Dep't* v. *American Fed'n of State, County & Mun. Employees, Council 93*, 420 Mass. 13, 16 (1995) (arbitration may not award relief which requires a result contrary to express statutory provision). See also *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 109 (1977). The restriction expressed in § 47A is, moreover, in substantial harmony with decisional law on this point. "[I]t is by now well-settled that 'specific appointment determinations . . . are within the exclusive managerial prerogative of [employers], and thus beyond the scope of collective bargaining.' " *School Comm. of Holbrook* v. *Holbrook*

---

[5]That a superintendent should have discretion whether to hire an athletic coach is to be expected, since athletic programs in public schools are optional and offered at the discretion of the school committee. See G. L. c. 71, § 47 (1994 ed.).

Educ. Ass'n, 395 Mass. 651, 655 (1985), quoting *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 211 (1982). Among the justifications for limitations on the bargaining authority of a school committee is the recognition that school officials must retain primary authority to make decisions about the "efficient use of scarce funds." *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, *supra* at 212. *School Comm. of Boston* v. *Boston Teachers Union, Local 66*, 395 Mass. 232, 237 (1985). The Legislature reasonably could consider that this authority should extend to decisions about whether to provide or retain optional, and perhaps costly, scholastic athletic programs. See G. L. c. 71, § 47 (1994 ed.). Given that a superintendent would not have the authority to enter into an agreement in contravention of the provisions of § 47A, just as a school committee would lack the authority to agree to terms in a collective bargaining agreement that were in conflict with the provisions of the legislation, we fail to perceive the "wholesale dismantling" of school committee authority which the union asserts would follow from the judge's decision.

Finally, we reject the union's contention that the judge erred by foreclosing arbitration of the related claim of disciplinary action taken against a teacher. A statement of reasons for nonrenewal of an annual stipendiary coaching appointment reasonably could not be construed as disciplinary action. Cf. *Leominster* v. *International Bhd. of Police Officers, Local 338, supra* at 122-123 nn. 4 & 5.

It follows from what we have said that "no lawful relief could conceivably be awarded by an arbitrator in this case." *Massachusetts Coalition of Police, Local 165* v. *Northborough, supra* at 256. An arbitrator could not order the grievant's reappointment as a coach. While the union has contended that the grievant would be entitled to renewal to the coaching appointment in the absence of just cause for nonrenewal, it has not been contended that any procedures required to be followed in connection with such appointments were violated.[6]

---

[6]Article XIV (e) of the agreement provides that, when a vacancy occurs in a coaching position, "preference will be given to athletically qualified, full-time teachers at the school where the vacancy occurs." Thus, the agreement addresses procedures for the appointment of coaches, an alleged violation of which clearly would be an appropriate subject for grievance and arbitration.

Contrast *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Ass'n*, 372 Mass. 121 (1977). See *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, *supra* at 213.

A statutorily created nondelegable right of management cannot be abrogated by agreement. *Massachusetts Coalition of Police, Local 165* v. *Northborough*, *supra* at 255. *Billerica* v. *International Ass'n of Firefighters, Local 1495*, 415 Mass. 692, 694 (1993). We conclude that the judge properly granted the school committee's motion for summary judgment and correctly declared that the superintendent's decision not to reappoint the grievant as coach was not arbitrable.

The portion of the judgment allowing the school committee's motion as to the grievance in issue is affirmed.

*So ordered.*