JENKINS vs. CASTELINA, MISC 20-000455

































 
 DELYTH JENKINS AND MARIO MORASCA, Plaintiffs, v. STEPHEN R. CASTELINA, PAUL BOUCHER, DONNA LEARY, PAUL MEGNA and MARC OLIVEIRA, as they are MEMBERS OF THE TOWN OF BERKLEY PLANNING BOARD and KAIVAL BERKLEY, LLC, Defendants
 MISC 20-000455 
 AUGUST 4, 2021
BRISTOL, ss.
SMITH, J.
DECISION














 This matter arises out of the decision of the Berkley Planning Board (the "Board") to issue three special permits and site plan approval which will allow the construction of three buildings on the property located at 34-38 Padelford Street in Berkley. In particular, Defendant, Kaival Berkley, LLC ("Kaival"), proposes to develop the site with a combination gasoline service station/convenience store/drive through donut facility, a bank with a drive through window, and a third building with proposed mixed-use operations (the "Project"). 





 Plaintiff, Delyth Jenkins ("Jenkins"), owns property that abuts the Project and filed this appeal of the decision which she says was improperly issued by the Board. [Note 1] 





 Before the court is Kaival's motion for summary judgment in which it asserts that Jenkins lacks standing to maintain this appeal. For the reasons set forth in this decision, Kaival's motion is ALLOWED. 





Discussion 





 A party's standing to assert a claim has been treated by Massachusetts courts as an issue of subject matter jurisdiction. Doe v. The Governor, 381 Mass. 702 , 705 (1980). Whether raised in a motion to dismiss under Rule 12(b)(1) or in a motion for summary judgment under Rule 56, the court may consider documents and other materials outside the four corners of the complaint when determining whether the court has subject matter jurisdiction to hear the case. Ginther v. Comm'r of Insurance, 427 Mass. 319 , 322, n. 6 (1998). 





 The right to appeal the decision of a local zoning board's grant of a special permit is governed by G.L. c. 40A, §17. Under §17, only a "person aggrieved" by a zoning decision is entitled to judicial review. Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115 , 117 (2011); Marshalian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719 , 721 (1996). Courts have interpreted the term "person aggrieved" as one who can assert "a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest that is separate and distinct from the concerns of the general community." Harvard Square Defense Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass. App. Ct. 491 , 493 (1989). The alleged injury must also be to a right or interest that the zoning bylaw is intended to protect. 81 Spooner Road, LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692 , 702 (2012); Standerwick v. Zoning Bd. of Appeals of Andover, 447 Mass. 20 , 27-28 (2006). 





 One who owns land which abuts property that is the subject of a request for zoning relief enjoys a rebuttable presumption of "person aggrieved" status. G.L. c. 40A, §17; Standerwick, 447 Mass. at 33; Denneny v. Zoning Bd. of Appeals of Seekonk, 59 Mass. App. Ct. 208 , 212 (2003). The presumption recedes, however, when the party defending the decision challenges the plaintiff's standing with "any additional evidence" showing that the plaintiff is not aggrieved. Standerwick, 447 Mass. at 33; Barvenik v. Bd. of Aldermen of Newton, 33 Mass. App. Ct. 127 , 131 (1992). However, the defendant need not present affirmative evidence to refute the plaintiff's basis for standing if he or she can "demonstrate [], by reference to material described in Mass.R.Civ.P 56(c), [ 365 Mass. 824 (1974),] unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving a cognizable injury." 81 Spooner Road LLC, 461 Mass. at 703, quoting Standerwick, 447 Mass. at 35. 





 Once the defendant offers evidence rebutting the presumption, the burden shifts to the plaintiff to prove standing "which requires that the [abutter] establish - by direct facts and not by speculative personal opinion - that his injury is special and different from the concerns of the rest of the community." Standerwick, 447 Mass. at 33, quoting Barvenik v. Bd. of Aldermen of Newton, 33 Mass. App. Ct. 127 , 131 (1992); see also Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115 , 122 (2011). The Kenner court addressed the degree of "aggrievement" necessary to sustain a standing challenge as follows: 





 "The adverse effect on a plaintiff must be substantial enough to constitute actual aggrievement such that there can be no question that the plaintiff should be afforded the opportunity to seek a remedy. To conclude otherwise would choke the courts with litigation over myriad zoning board decisions where individual plaintiffs have not been, objectively speaking, truly and measurably harmed. Put slightly differently, the analysis is whether the plaintiffs have put forth credible evidence to show that they will be injured or harmed by proposed changes to an abutting property, not whether they simply will be 'impacted' by such changes."





Id. Under this standard, the court found no standing for an abutter who had alleged harm in the form of the obstruction of an ocean view, a diminution in his property value, and an increase in traffic on a narrow road in front of his house, reasoning that such alleged harms were either de minimus or speculative. Id. See also, Barvenik, 33 Mass.App.Ct. at 131 ("subjective and unspecified fears about the possible impairment of aesthetics or neighborhood appearance, incompatible architectural styles, the diminishment of close neighborhood feeling, or the loss of open space or natural space are all considered insufficient bases for aggrievement under Massachusetts law."); Denneny v. Zoning Bd. of Appeals of Seekonk, 59 Mass. App. Ct. 208 , 211 (2003) (holding that plaintiff's testimony that the proximity of a cell tower to her property would diminish its value was speculative and conclusory and did not support a finding of "aggrieved person" status); Cohen v. Zoning Bd. of Appeals of Plymouth, 35 Mass. App. Ct. 619 (1993) (holding that conclusory assertions of increased traffic, without evidence of specific injury to abutter's property, was insufficient to confer standing on abutter); Harvard Square Defense Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass. App. Ct. 491 (1989) (holding that an abstract interest in the enforcement of zoning by-laws was insufficient to confer standing on an abutter). 





 If the plaintiff's claim of harm is rebutted by evidence from the defendant, the court will decide the issue of standing on all the evidence, with no benefit to the plaintiff from the presumption of aggrievement. Barvenik, 33 Mass.App.Ct. at 131. 





 In this case, Jenkins is a direct abutter to the Project and, therefore, enjoys a presumption of standing to challenge the decision of the Board. At the outset of the case, Jenkins identified in the Joint Statement (Defendant's Exhibit H) and in her deposition testimony that the Project would cause harm to her in the form of (1) increased traffic, (2) noise pollution, (3) air pollution, (4) light pollution, and (5) water pollution. Defendant's Exhibit I. In response to Jenkins' description of the harms she claims would be caused by the Project, Kaival engaged consultants to evaluate each. Specifically, Kaival hired Robert Michaud, a licensed traffic engineer, to evaluate the traffic impacts of the Project on Jenkins (Defendant's Exhibit J); Christopher Menge, an acoustical engineer, to evaluate any noise impacts on Jenkins (Defendant's Exhibit K); Philip M. DeVita, an air quality consultant, to evaluate whether the Project would cause air pollution that would harm Jenkins (Defendant's Exhibit O); Vincent A. DiLorio, a lighting consultant, to evaluate the impact of lights from the Project on Jenkins (Defendant's Exhibit L); and Steven D. Gioiosa, a civil engineer, to evaluate whether the Project would cause water pollution that would harm Jenkins (Defendant's Exhibit E). 





 Each of Kaival's consultants provided an affidavit that explained the analysis performed to determine whether Jenkins' concerns about harm were supported by facts. In the case of each consultant, he concluded that the concerns raised by Jenkins were not supported by facts and that the Project would not cause harm to Jenkins. Based on my review of these affidavits, I find that Kaival has rebutted the presumption of standing that Jenkins benefits from as an abutter. 





 As a result, the burden shifts to Jenkins to establish by facts and not by speculative personal opinion that she will suffer harm from the Project that is special and different from the concerns of the rest of the community in order to survive Kaival's challenge to her standing. From there, the court must determine whether Jenkins has standing with no benefit to her from the presumption of aggrievement as an abutter. 





 This case is unusual, however, because Jenkins abandoned her original assertions of harm when she filed her written opposition to Kaival's motion for summary judgment. Indeed, her opposition states on page 5 that she is no longer claiming traffic impact on her property or "noise, air or water pollution impact on her property." Instead, Jenkins has focused on "light pollution" which she claims will be caused by a hypothetical, free-standing lighted sign which she anticipates will be constructed in the future on the Project property, but which was not applied for by Kaival and was not approved, or even mentioned, in the Board's decision. 





 Jenkins developed the characteristics of the free-standing sign that she argues gives her standing based on comments made by Kaival's "broker and permitting consultant," David Wluka, during the public hearing before the Board and in his deposition testimony as well as the deposition testimony of Kaival's principal, Nilesh Patel. According to Jenkins, Wluka stated during the public hearing that a free-standing sign would be erected on the Project property in the future, that a sign was "essential" to the Project (Plaintiff's Exhibit B), and that the exact placement and dimensions of the sign would be driven by its visibility to Route 24 (Plaintiff's Exhibit E, p.46). Similarly, Jenkins points to the deposition testimony of Nilesh Patel in which he discussed a future sign as follows: 





 "It has to be visible from the highway . . . the idea is . . . visibility from [Route 24] . . [Such signs] are all up and down the highway now. It's normal for this kind of facility on a major highway." 





Plaintiff's Exhibit D, p.19. 





 Jenkins also retained Azuanuka Etoniru, a civil engineer, to assist her in evaluating the visual impact of a hypothetical sign on her dwelling at 4 Jerome Street. According to Etoniru's affidavit, he conducted certain studies of the Project and Jenkins' property and determined that "any business sign located anywhere on the Kaival site that is intended to be visible to vehicles traveling on Route 24 would be at least 100 feet tall." Plaintiff's Exhibit A, Etoniru Affid., ¶11. Based on that assumption, Etoniru opined that such a business sign, illuminated at night, will be a visual intrusion into the yard space and the residence owned by Jenkins and "would be especially intrusive at night to anyone occupying the second floor bedrooms." Plaintiff's Exhibit A, Etoniru Affid., ¶¶12, 13. 





 The problem with Jenkins' argument and Etoniru's analysis is that the decision of the Board did not include the approval of a free-standing sign. Defendant's Exhibit A. While it is possible that the hypothetical sign conceived of by Jenkins and Etoniru would be visible and intrusive to Jenkins, no such sign has been proposed by Kaival nor has it been approved by the Board. Whether the Project will eventually include a free-standing sign, 100 feet in height which is illuminated and visible from the Jenkins property is pure speculation and, therefore, not evidence of harm to Jenkins that satisfies the standing requirement. 





 Any sign that is proposed by Kaival or others for use on the Project will have to meet the sign requirements of section 10 of the Berkley zoning bylaw unless Kaival requests special relief from that section in which case Jenkins will have an opportunity at that time to review the sign application, register her objections to the Board and, if unsuccessful, seek judicial review of that decision. However, her claims of injury now, even as supported by Etoniru's affidavit, are speculative. 





 Jenkins also argues that the Board erred in "issuing a blanket grant of all unidentified waivers" to the Project. She claims that a decision to issue a blanket waiver is both legally untenable and arbitrary and "leaves the decision to the unbridled fiat of the board." However, Jenkins' interest in the enforcement of Berkley's zoning bylaws is not a harm to her that is sufficient to confer standing. See Harvard Square Defense Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass. App. Ct. at 495-496; Chongris v. Bd. of Appeals of Andover, 17 Mass. App. Ct. 999 , 999 (1984). 





 Regardless, Jenkins' description of the Board's decision as including a "blanket waiver of all unidentified waivers" exaggerates the import of the language used in the decision. The Board's Finding #7 states that the Kaival plan 





 "substantially conforms with the Board's Rules & Regulations Governing the issuance of Special Permits in the General Business and Special Business Overlay District. To the extent waivers are required from said Rules & Regulations under Section VIII, the Board has voted to grant such waivers." 





Defendant's Exhibit A, Finding #7. While one can question the prudence of the Board in granting waivers of unidentified provisions "to the extent waivers are required," the waivers referred to in Finding #7 are from the "Rules & Regulations" that govern the Board's consideration of Kaival's special permit application to which the Board found the Project substantially conformed. Kaival did not request a waiver of section 10 of the bylaw, nor does any reasonable interpretation of the Board's Finding #7 reflect that the Board waived Kaival's requirement to comply with section 10 if, and when, it applies for a permit to erect a sign. 





Conclusion 





 For the foregoing reasons, I find that Jenkins has not established that the Project approved in the Board's decision will harm her and, therefore, she does not have standing to maintain this action. Kaival's Motion for Summary Judgment is ALLOWED, and judgment shall issue in its favor and in favor of the Defendants, Stephen R. Castellina, Paul Boucher, Donna Leary, Paul Megna and Marc Oliveira, as they are Members of the Town of Berkley Planning Board. The Plaintiffs' Complaint shall be dismissed with prejudice. 





FOOTNOTES
[Note 1] Plaintiffs' counsel informed the court at the hearing that Plaintiff, Mario Morasca, is no longer participating as a party in this case. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.