POLICE COMMISSIONER OF BOSTON *vs.* JOSEPH CECIL
& another.[1]

Suffolk. April 3, 2000. - May 10, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Civil Service,* Police, Probationary period. *Public Employment,* Police, Termination. *Police,* Probationary period. *Statute,* Construction.

The police commissioner of Boston properly placed a probationary police officer on paid administrative leave pending the outcome of a departmental investigation into his fitness for duty, and the administrative leave tolled (extended) the probationary period, consistent with the purpose of probationary employment and the public interest, pending the conclusion of the investigation. [413-416]

CIVIL ACTION commenced in the Superior Court Department on July 8, 1997.

The case was heard by *Linda Giles,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John Foskett (Laurie W. Engdahl* with him) for the plaintiff.

*Amy Laura Davidson* for Joseph Cecil.

SPINA, J. The police commissioner of Boston (department or commissioner) appeals from a judgment of the Superior Court under G. L. c. 30A, § 14, affirming a decision of the Civil Service Commission (commission) that restored Joseph Cecil to the position of Boston police officer with back pay. The department claims that Cecil was a probationary officer whose employment was terminated and, therefore, the commission's decision to grant him tenure was based on an error of law. We remand the matter to the Superior Court where the decision of the commission is to be set aside.

We summarize the facts found by the commission. Cecil was appointed a Boston police officer on March 22, 1995, and thus

---

[1]Civil Service Commission.

began his one-year probationary period in the position. See G. L. c. 31, § 61.[2] On March 12, 1996, the Probate and Family Court issued an ex parte protective order against Cecil pursuant to G. L. c. 209A. Cecil notified his captain of the existence of the order, as required by the department's rules and regulations, and that a hearing was scheduled for March 22. He surrendered his service weapon, also in accordance with the department's rules and regulations.

Cecil was the subject of an ongoing departmental investigation that had begun earlier in March, 1996, involving his marital circumstances, prior military experience, and a civilian complaint. As a result of that investigation, the bureau of internal investigations (bureau) had recommended that Cecil was unfit for duty. The commissioner notified Cecil on March 13, 1996, that, effective the next day, he was being placed on paid administrative leave and relieved of his duties as a Boston police officer pending the outcome of the investigation. On March 21 the commissioner notified Cecil that pursuant to G. L. c. 31, § 34,[3] his probationary period was being extended for two months to May 21, 1996. No reasons for the extension were stated.

---

[2]General Laws c. 31, § 61, provides, in pertinent part:

"Following his original appointment as a permanent full-time police officer . . . in a city, or in a town where the civil service law and rules are applicable to such position, a person shall *actually perform* the duties of such position on a full-time basis for a probationary period of twelve months before he shall be considered a full-time tenured employee in such position, except as otherwise provided by civil service rule . . ." (emphasis added).

[3]General Laws c. 31, § 34, second par., provides, in pertinent part:

"During the probationary period, he may be subject to a performance evaluation during his first two months of service and a second evaluation may be conducted at least one month prior to his sixth month anniversary date of service. The appointing authority may extend the probationary period for a period of two months if the second evaluation of the probationary employee is unsatisfactory. Such evaluation may be utilized by the appointing authority, but in no instance shall the appointing authority be required to consider the results of such evaluation in a determination of granting such employee permanent or tenured status. . . ."

On March 22, 1996, the ex parte protective order was vacated. Accordingly, Cecil notified his captain and requested permission to return to his duties. He received no response. His request was renewed on March 25, 1996, by counsel, who also requested rescission of the extension of his probationary period. There was no response.

The bureau, as part of its ongoing investigation of Cecil, sought an evaluation of his fitness for duty from the department's medical unit. Cecil was evaluated by a psychologist during July, 1996, and a report was submitted to the bureau in October. On October 22 the commissioner notified Cecil pursuant to § 34, fifth par., that his employment was terminated for unsatisfactory "conduct and capacity" during his probationary period. The letter referred to the psychological report and recent information indicating "a propensity for untruthfulness and violence . . . characteristics . . . unsuitable for . . . a Boston [p]olice [o]fficer."

Cecil appealed to the commission pursuant to G. L. c. 31, §§ 42 and 43, on October 29, 1996, and a hearing took place before the division of administrative law appeals. The administrative magistrate concluded that the department's use of the administrative leave to extend Cecil's probationary period of employment was inconsistent with the "basic merit principles"[4] of civil service because it was intended, at least in part, to block his attainment of tenure and the accompanying job protections afforded by G. L. c. 31, §§ 41-45. The administrative magistrate also concluded that, absent statutory authority to extend or toll the probationary period of employment during an administrative leave, such leave can have no such effect, wherefore Cecil must

---

[4]General Laws c. 31, § 1, defines "[b]asic merit principles" as "(*a*) recruiting, selecting and advancing of employees on the basis of their relative ability, knowledge and skills including open consideration of qualified applicants for initial appointment; (*b*) providing of equitable and adequate compensation for all employees; (*c*) providing of training and development for employees, as needed, to assure the advancement and high quality performance of such employees; (*d*) retaining of employees on the basis of adequacy of their performance, correcting inadequate performance, and separating employees whose inadequate performance cannot be corrected; (*e*) assuring fair treatment of all applicants and employees in all aspects of personnel administration without regard to political affiliation, race, color, age, national origin, sex, marital status, handicap, or religion and with proper regard for privacy, basic rights outlined in this chapter and constitutional rights as citizens, and; (*f*) assuring that all employees are protected against coercion for political purposes, and are protected from arbitrary and capricious actions."

be deemed to have completed his probationary period of employment and entitled to tenure. She recognized the legitimate purpose of the department's investigation into Cecil's conduct and capacity to serve as a Boston police officer, but discounted it for the reasons stated. She recommended that Cecil be recognized as having acquired tenured status such that the department was required to follow the procedural require- ments of G. L. c. 31, §§ 41-42, before terminating his employ- ment. She further recommended that Cecil be restored to his position with back pay. The commission adopted the findings of the administrative magistrate and ordered the recommended ac- tion. The Superior Court affirmed the decision of the commis- sion.

Section 34, second par., provides for the extension of the probationary period for two months following an unsatisfactory evaluation at a specified stage during the probationary period. Although the commissioner notified Cecil that his probation was extended for two months, the department at least tacitly concedes that there was no such extension, for two reasons: (1) there never was an unsatisfactory evaluation of Cecil as would warrant an extension; and (2) the department contends that the probationary period was tolled by the administrative leave. Sec- tion 34, sixth and seventh pars., provide for a tolling of the probationary period during periods of illness and educational leave, respectively. None of the extension or tolling provisions of § 34 avails the department's position. The commission concluded that omission of administrative leave under § 34 as a basis for extending or tolling the probationary period precludes its use for those purposes, and the Superior Court judge ruled that the commission's interpretation was not unreasonable.

A reviewing court accords due weight and deference to an agency's reasonable interpretation of a statute within its charge, *Massachusetts Med. Soc'y* v. *Commissioner of Ins.*, 402 Mass. 44, 62 (1988), but "[t]he duty of statutory interpretation is for the courts." *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 344 (1964). A familiar "maxim of statutory construction . . . sug- gests that a statutory expression of one thing is an implied exclusion of other things omitted from the statute." *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975), and cases cited. We observed, however, that "the maxim is not to be followed where to do so would frustrate the general beneficial purposes of the legislation." *Id.*

When interpreting an earlier version of § 34 we said that its "manifest purpose is that the fitness of an appointee be actually demonstrated by service within a probationary period." *Younie* v. *Director of Div. of Unemployment Compensation,* 306 Mass. 567, 570 (1940). This purpose is "designed to benefit the public." *Leominster* v. *International Bhd. of Police Officers, Local 338,* 33 Mass. App. Ct. 121, 127 (1992). "With respect to police officers and fire fighters, in particular, the Legislature recognized the special need of a prolonged probationary period by extending the period from six months to one year. See St. 1977, c. 438, and now G. L. c. 31, § 61. Courage, good judgment, and the ability to work under stress in the public interest and as part of an organization, are qualities that are not quickly perceived. The policy of the statute is to ensure sufficient time for a careful determination whether they are present in sufficient degree." *Id.* Where § 61 calls for a newly appointed police officer to *"actually perform* the duties of such position on a full-time basis for a probationary period of twelve months" (emphasis added), the intent of the Legislature could not be clearer. The commission exceeded its authority when it credited Cecil the nine days he did not serve in his probationary period.

The department has a legitimate interest in placing any officer on administrative leave pending the outcome of an investigation concerning that officer's fitness to continue serving. There is no challenge to the department's authority to take such action, nor is there any serious dispute here as to the department's basis for taking such action against Cecil. The commission concluded that, because the department could conduct its investigation against Cecil as a tenured employee just as easily as it could if he were a probationary employee, then he should not be deprived of the "basic merit principles" of civil service. That reasoning is hollow. We have made clear that care must be taken "not to hobble the employer unduly in the process of selection for tenure because dislodgment thereafter is notoriously difficult; the rigidities in removing unfit tenured employees which have led to attempts at Federal reform teach a lesson as to the pretenure period also." *Costa* v. *Selectmen of Billerica,* 377 Mass. 853, 860-861 (1979). The department proceeded judiciously in this case, taking care to make an informed decision as to Cecil's fitness. It did so out of fairness to him, because it was mindful of its responsibility to the public, and because of the time, training, and money it had invested in Cecil's appoint-

ment. It is not disputed that the commissioner could have sent Cecil a termination notice on March 13, 1996, based on the G. L. c. 209A order and the other matters then under investigation. The commissioner chose not to act in haste, and for that Cecil may receive no windfall. The commission's suggestion that the commissioner could have waited until Cecil was tenured before placing him on administrative leave disregards the commissioner's responsibility to the public as well as the public interest, and does nothing to legitimately advance "basic merit principles."

The legitimacy of the need promptly to take a probationary officer out of service pending an investigation as to his fitness justifies the need for tolling his twelve-month probationary period, in the public interest. Other jurisdictions have taken this view. In *Matter of Garcia*, 225 A.D.2d 123 (N.Y. 1996), aff'd, 90 N.Y.2d 991 (1997), a probationary period was extended pending a fourteen-month investigation into the propriety of an officer's response at the scene of a crime. The officer was placed on modified duty, not one of the statutorily permitted grounds for extending the period of probation, and the officer made an argument similar to that made here. The court concluded that "because [the officer] was not performing 'police duties,' " the probationary period was tolled. *Id.* at 126. The court reasoned that the tolling was "consistent with the function of probation, which is to permit the appointing officer the opportunity to evaluate the officer's merit and fitness to perform the duties of police work." *Id.* The court further reasoned that, consistent with the premise of probation, the department should not be denied the opportunity to conduct a complete and thorough investigation before taking action. *Id.* at 127. We think the court's reasoning in *Matter of Garcia, supra,* is applicable here.

The commission's expressed concern that tolling the probationary period pending an investigation opens the process to abuse is answered by the facts of the case. Cecil's leave was not indefinite, but tied to the outcome of the investigation. He was being paid his full salary while the investigation was being conducted, so the department had an interest in concluding the investigation in a timely fashion. See *Pennsylvania Dep't of Pub. Welfare* v. *State Civil Serv. Comm'n,* 707 A.2d 589, 591 (Pa. Commw. Ct. 1998) (probationary period may be extended for purpose of good faith evaluation and not as pretext for improper purpose).

Finally, Cecil argues that he was denied a "name-clearing" hearing. See *Costa* v. *Selectmen of Billerica, supra* at 862; *Fontana* v. *Commissioner of Metro. Dist. Comm'n,* 34 Mass. App. Ct. 63, 70 (1993). He is entitled to such a hearing, but he must request one within a reasonable time after the rescript issues herein. Such a hearing is independent of his termination.

We conclude that the paid administrative leave imposed on Cecil pending the outcome of the investigation into specific matters that affected his fitness to serve tolled his probationary period, and that such tolling was consistent with the purpose of probationary employment and the public interest. The commission's conclusion that administrative leave could not toll the probationary period is an error of law.

The judgment of the Superior Court is vacated. The case is remanded to the Superior Court for the entry of a judgment setting aside the decision of the commission and affirming the commissioner's termination of Cecil's employment. The order for back pay is vacated.

*So ordered.*