## Board of Selectmen of Brookline & another[1] *vs.* Leanders H. Smith & another.[2]

No. 02-P-172.

Norfolk. April 11, 2003. - August 11, 2003.

Present: Porada, Kass, & Greenberg, JJ.

*Police Officer. Police,* Probationary period, Discharge. *Civil Service,* Decision of Civil Service Commission, Judicial review, Police, Probationary period.

In a civil action reviewing the ruling of the Civil Service Commission (commission) that overturned the decision of the plaintiff to discharge the defendant from his position as a police officer, the judge correctly determined that the time that the defendant spent in the police academy did not count toward the one-year probationary period required under G. L. c. 31, § 61, before achieving tenure, and that the commission had acted beyond its authority. [815-817]

Civil action commenced in the Superior Court Department on March 2, 2001.

The case was heard by *Elizabeth Butler*, J., on motions for judgment on the pleadings.

*Jack J. Canzoneri* for Andrew Thorpe & another, amici curiae.

*Leanders H. Smith*, pro se.

*George F. Driscoll, Jr.*, for the plaintiffs.

Greenberg, J. Within a year of graduating from the police academy, Leanders Smith was discharged from his position as a police officer. Smith argues that the period of his attendance at the academy should count towards satisfaction of the one-year probationary period provided for under G. L. c. 31, § 61.[3] If so,

---

[1]Police department of Brookline.

[2]Civil Service Commission.

[3]The applicable portion of G. L. c. 31, § 61, applies to appointment as a permanent full-time police officer and reads as follows:

he would enjoy the status of a tenured police officer and, accordingly, be entitled to a higher level of procedural due process than he received in connection with the termination of his employment. See G. L. c. 31, § 41 (outlining process due tenured civil service employees before they may be discharged). According to the board of selectmen (board), the probationary clock does not begin to tick until after graduation from the police academy. Thus, they continue, Smith was fired while still an untenured officer in his probationary period and, in fact, received more procedural protections than were his due.

Smith appealed his discharge to the Civil Service Commission (commission), which ordered him reinstated. The board then filed for judicial review. The case was placed before a Superior Court judge on cross motions for judgment on the pleadings. She determined that Smith was not a tenured employee and that the commission had acted beyond its authority. Smith appealed. We agree with the motion judge that time spent in the police academy does not count towards the one-year probationary period required before achieving tenure.

1. *Facts.* Smith was assigned to the Norwood Police Academy on April 13, 1998. Delayed by a medical leave of absence, Smith graduated on February 12, 1999. The board voted "to appoint Leanders Smith to the position of Police Officer in the Brookline Police Department, effective February 23, 1999," and Smith was sworn in on that day.[4] On December 8, 1999, Smith was placed on administrative leave, and shortly thereafter, he

"Following his original appointment as a permanent full-time police officer or fire fighter in a city, or in a town where the civil service law and rules are applicable to such position, a person shall actually perform the duties of such position on a full-time basis for a probationary period of twelve months before he shall be considered a full-time tenured employee in such position, except as otherwise provided by civil service rule. The administrator, with the approval of the commission, may establish procedures to ensure the evaluation by appointing authorities, prior to the end of such probationary period, of the performance of persons appointed as regular police officers or fire fighters."

[4]There is no evidence in the record that Smith took the oath of office at any other time, though there was evidence that Smith had been referred to in department records as a "police officer" prior to that date.

received notice of the allegations of improprieties against him. He was afforded two opportunities to be heard, once before a hearing officer and another before the board. On February 2, 2000, Smith was served with notice of his termination.

2. *Discussion.* Although we give due deference to commission decisions, a reviewing court may set aside such a decision if the substantial rights of any party have been prejudiced because the agency decision was unlawful for, among other reasons, exceeding its jurisdiction. See *Boston Police Superior Officers Fedn.* v. *Labor Relations Commn.*, 410 Mass. 890, 892 (1991); G. L. c. 30A, § 14(7)(*b*); G. L. c. 31, § 44. If Smith was not tenured, then the commission lacked jurisdiction to hear his appeal. See G. L. c. 41, § 133, inserted by St. 1995, c. 283 (during police officer's one-year probationary period, "removal or dismissal shall be without recourse"). Thus, the case turns on whether Smith's probationary year began on April 13, 1998 (the date of his assignment to the academy), or on February 23, 1999 (the date of his appointment "as a Police Officer" and his taking the oath of office). "[T]he duty of statutory interpretation is for the courts." *Police Commr. of Boston* v. *Cecil*, 431 Mass. 410, 413 (2000), quoting from *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 344 (1964).

General Laws c. 31, § 34, states in pertinent part: "Following his original appointment to a civil service position as a permanent full-time employee, a person *shall actually perform the duties of such position on a full-time basis* for a probationary period of [twelve months, as provided by G. L. c. 31, § 61,] before he shall be considered a full-time tenured employee" (emphasis supplied). General Laws c. 41, § 96B, as amended by St. 1994, c. 333,[5] states in pertinent part:

> "Every person who receives an appointment to a position on a full-time basis in which he will exercise police powers in the police department of any city or town, *shall, prior to exercising police powers, be assigned to and satisfactorily complete a prescribed course of study* approved by the department of criminal justice training. The

---

[5]We quote the statute as it was in effect at the time relevant for this appeal, the quoted section remains substantially unchanged in the current statute. See St. 2002, c. 196, § 17.

provisions of chapter thirty-one and any collective bargaining agreement notwithstanding, *any person so attending such a school shall be deemed to be a student officer and shall be exempted from the provisions of chapter thirty-one* and any collective bargaining agreement for that period during which he is assigned to a municipal police training school, provided that such person shall be paid the regular wages provided for the position to which he was appointed and such reasonable expenses as may be determined by the appointing authority and be subject to the provisions of chapter one hundred and fifty-two" (emphasis supplied).

Not only does G. L. c. 41, § 96B, explicitly exempt student officers from the civil service law, but it also prohibits them from exercising any police powers until graduation. Surely the exercise of police powers is required in order to "actually perform the duties" of a police officer for the probationary year. G. L. c. 31, § 34.

As the Supreme Judicial Court explained in *Police Commr. of Boston* v. *Cecil*, 431 Mass. at 414, this interpretation comports with the manifest purpose of the probationary statute. " 'Courage, good judgment, and the ability to work under stress in the public interest and as part of an organization, are qualities that are not quickly perceived. The policy of the statute is to ensure sufficient time for a careful determination whether they are present in sufficient degree.' Where [G. L. c. 31,] § 61[,] calls for a newly appointed police officer to '*actually perform* the duties of such position on a full-time basis for a probationary period of twelve months' . . . , the intent of the Legislature could not be clearer" (emphasis in original). *Police Commr. of Boston* v. *Cecil, supra* (citations omitted).[6]

Smith contends that, beginning with his appointment to the police academy, various records referred to him as a "police of-

---

[6]Smith's contention that *Police Commr. of Boston* v. *Cecil, supra* at 410-411, presumed the probationary period began on the date of appointment to the academy is to no avail. First and most importantly, the parties had stipulated to that fact, and therefore, the court did not address it. See *Cecil* v. *Boston Police Dept.*, 10 Mass. Civ. Serv. Rptr. 150 (1997). Second, Cecil's appointment was March 22, 1995, which was prior to the effective date of the rewritten G. L. c. 41, § 96B, of April 11, 1995. The statute in effect when Cecil was appointed was St. 1991, c. 412, § 49.

ficer," see note 4, *supra*, and that he "worked the streets of Brookline on February 15, 1999," as well as on February 22, 1999. The question, however, is whether Smith actually performed the duties of a police officer on a full-time basis for twelve months prior to his discharge. See G. L. c. 31, § 34. During the time he attended the academy, Smith was statutorily prohibited from exercising police powers. See G. L. c. 41, § 96B. Smith argues that police officers perform many duties that do not include the exercise of police powers, including the duty to attend the police academy to receive training. We disagree. General Laws c. 31, § 34, requires that police officers actually perform their duties; it does not discuss the time it takes to learn to perform them. While one may speak of a recruit's "duty" to attend the academy, this is not one of the duties of a full-fledged police officer. Looking to the plain meaning of the words of the statute, "actual performance of the duties of such position" refers to the graduated officer with the authority to exercise police powers, as distinct from the student officer, who is in the process of learning to exercise such powers properly. The Superior Court did not err in so deciding.

*Judgment affirmed.*