STEPHEN N. PAPLEACOS, JR. *vs.* TOWN OF TEWKSBURY
& another.[1,2]

No. 11-P-756.

Middlesex. December 5, 2011. - September 20, 2012.

Present: GRAHAM, BROWN, & MEADE, JJ.

*Police Officer. Municipal Corporations,* Police. *Police,* Probationary period,
Discharge.

In a civil action seeking the plaintiff's reinstatement after he had been terminated
from his position as a permanent intermittent police officer for the defend-
ant town, the judge properly granted summary judgment in favor of the
town, where the plaintiff was not entitled to the protections of a tenured
employee, given that his employment had been terminated prior to the
expiration of his probationary period, which properly was extended for
twelve months when he did not actually perform the duties of the position
for thirty days during his initial six-month probationary period. [444-447]

CIVIL ACTION commenced in the Superior Court Department on
April 27, 2005.

The case was heard by *Nancy S. Holtz,* J., on motions for
summary judgment.

*Richard K. Sullivan* for the plaintiff.

*Kelly T. Gonzalez* for the defendants.

BROWN, J. Stephen N. Papleacos, Jr., appeals from a summary
judgment dismissing his complaint seeking reinstatement after
he was terminated from his position as a permanent intermittent
police officer for the town of Tewksbury (town). Papleacos al-
leges that the motion judge erred in concluding that his proba-

[1]Town manager of the town of Tewksbury.

[2]In an unpublished memorandum and order issued on May 3, 2012, under
our rule 1:28, we affirmed the judgment. See *Papleacos* v. *Town of Tewks-
bury,* 81 Mass. App. Ct. 1133 (2012). This opinion in general follows the rule
1:28 memorandum and order. We publish this opinion because of the novel is-
sue regarding intermittent police officers.

tionary period was extended for an additional twelve months and that, therefore, he was not entitled to the protections of a tenured employee. Resolution of the appeal thus requires a determination of when, under the applicable statutes, Papleacos's probationary period began and ended.[3]

*Background.* Papleacos was appointed as a permanent intermittent police officer with an employment start date of October 27, 2003. He attended a regional police academy from October 20, 2003, through March 12, 2004.[4] On March 16, 2004, Papleacos was appointed as an intermittent police officer for the town, and on March 18, 2004, he was sworn in by the town clerk. Based on the recommendation of the chief of police, the town terminated Papleacos's employment on October 27, 2004. See G. L. c. 31, § 34.

*Discussion.* At issue is the length of Papleacos's probationary period. Two different statutory provisions affect the probationary period for intermittent police officers — G. L. c. 31, § 34, and G. L. c. 41, § 96B.[5]

The town argues that Papleacos's probationary period began upon his original appointment with a start date of October 27, 2003, relying on the civil service unit certification handbook for permanent intermittent police officers issued by the human resources division of the Executive Office for Administration and Finance, which explicitly states: "[T]he probationary period for . . . intermittent employees begins on the first date of their appointment, as recorded by the Appointing Authority on the Authorization Employment Form 14." The town then argues that because, due to his attendance at the training academy, Papleacos did not actually perform the duties of the position for thirty days during that probationary period, the probationary

---

[3]At the appellate level, the court examines a grant of summary judgment de novo. *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007).

[4]Papleacos raises the issue whether he was obligated to complete the police training course. The civil service unit certification handbook for permanent intermittent and reserve service is not as helpful as it could be.

[5]When two statutes control, "the two statutes can be read together, giving meaning and purpose to both." *Alliance to Protect Nantucket Sound, Inc.* v. *Energy Facilities Siting Bd.*, 457 Mass. 663, 673 (2010).

period was extended, pursuant to G. L. c. 31, § 34,[6] for an additional twelve months.[7]

Papleacos argues that his probationary period did not commence to run until he completed his tenure at the police academy. See *Selectmen of Brookline* v. *Smith*, 58 Mass. App. Ct. 813, 814 (2003) ("time spent in the police academy does not count towards the one-year probationary period required before achieving tenure"). The premise of Papleacos's argument is that police officers, who are required to undergo training prior to beginning their work as officers, must be treated differently than other civil service employees. Accordingly, he argues that his probationary period expired in September, 2004, prior to his termination, and that he is entitled to all the protections of a tenured employee.[8]

Papleacos's argument is off the mark because the statutes involved — G. L. c. 31, § 34, and G. L. c. 41, § 96B — treat

---

[6]That section, inserted by St. 1973, c. 393, § 11, provides, in pertinent part:

> "Following his original appointment as a permanent employee to a less than full-time civil service position, including a reserve, intermittent, call, recurrent, or part-time position, a person shall serve a probationary period of six months immediately following such appointment, which shall include the actual performance of the duties of such position for not less than thirty working days or the equivalent thereof during such period, before he shall be considered a less than full-time tenured employee, provided that if such person has not performed such duties for such thirty working days or the equivalent thereof, his probationary period shall be extended for *an additional twelve months*, at the end of which time such person, if his employment has not been terminated in accordance with the provisions of this section, shall be deemed to be a tenured employee" (emphasis supplied).

[7]It is undisputed that in the six months following his completion of training at the police academy, Papleacos performed the duties of the position for more than thirty days.

[8]He also argues, but only in a footnote, that there is a genuine issue of material fact whether he worked as a police officer for more than thirty days in the six months after his October of 2003 "employment date." This does not rise to the required level of appellate argument. See *Mole* v. *University of Mass.*, 442 Mass. 582, 603 n.18 (2004). The town argues that Papleacos waived the argument by failing to raise it and further contends that Papleacos worked only twenty-five and one-half days in the probationary period. Papleacos's reply brief for the first time directs us to some record support for his assertion that he worked more than thirty days during his probationary period, but again gives us no analysis. In any event, deciding as we do, we need not address this issue.

full-time police officers differently from intermittent officers.[9] Reading those statutes in harmony, it is clear that the Legislature sought to distinguish full-time police officers from intermittent or reserve police officers. General Laws c. 31, § 34, first par., inserted by St. 1978, c. 393, § 11, provides, as to full-time employees, that "[f]ollowing his original appointment . . . a person shall actually perform the duties of such position on a full-time basis for a probationary period of six months." The third paragraph of § 34 applies to intermittent employees and provides for a six-month probationary period "*immediately* following such appointment" (emphasis supplied). The third paragraph goes on to state that the probationary period "shall include the actual performance of the duties of such position." That language is not present in the statutory language governing the probationary period of full-time police officers. For that reason, the town distinguishes this court's holding in *Smith*, 58 Mass. App. Ct. at 814, which involved the appointment of permanent full-time officers.

We have no need to address this specific dispute, as we decide the question on another ground. General Laws c. 41, § 96B, requires that full-time officers undergo training at a police academy prior to exercising police powers. See 550 Code Mass. Regs. § 3.03(1) (1997). In recognition of the explicit training academy requirement for full-time officers, G. L. c. 41, § 96B, first par., as appearing in St. 1994, c. 333, provides that full-time officers "shall be exempted from the provisions of chapter thirty-one" while undergoing training. See 550 Code Mass. Regs. § 3.03(1) (1997) (full-time municipal police officers). Thus, it reasonably may be inferred that this exemption would encompass the probationary period provisions of c. 31, § 34. No such exemption, however, appears for intermittent officers.

*Conclusion.* For the foregoing reasons, on May 3, 2012, we concluded that Papleacos's six-month probationary period started after his appointment on October 27, 2003, and properly was extended for twelve months when Papleacos did not actually

---

[9]Prior versions of G. L. c. 41, § 96B, e.g., as appearing in St. 1972, c. 697, addressed a "regular police officer on a permanent full-time basis." Additional language concerning intermittent police officers was approved in 1995. See G. L. c. 41, § 96B, as appearing in St. 1994, c. 333.

perform the duties of the position for thirty days during that probationary period.