SUPERIOR COURT 
 
 RICK GRIFFIN vs. MASSACHUSETTS CIVIL SERVICE COMMISSION & others[1]

 
 Docket:
 2021-838-G 
 
 
 Dates:
 June 21, 2022
 
 
 Present:
 Paul D. Wilson Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON CROSS MOTIONS FOR JUDGMENT ON THE PLEADINGS
 
 

             Plaintiff Rick Griffin was a probationary Revere police officer, pursuant to M.G.L. c. 31, § 61, when Defendant City of Revere, through its mayor, Defendant Brian Arrigo, terminated his employment.  Mr. Griffin appealed his termination to Defendant Civil Service Commission.  Determining that it lacked jurisdiction to hear Mr. Griffin’s appeal as his termination occurred within his probationary period, the Commission dismissed Mr. Griffin’s appeal in a decision dated March 11, 2021 (the “Decision”).
            Mr. Griffin then brought this case, appealing the Commission’s Decision under M.G.L.  c. 30A, § 14, M.G.L. c. 31, § 44, and M.G.L. c. 231A, § 2.  In Count I, Mr. Griffin seeks judicial review of the Decision.  Specifically, he requests that I vacate the Decision, order the Commission to hold a full hearing on his disciplinary appeal, and order the City to hold a name-clearing hearing.  In Count II, he requests that I declare that the Commission has jurisdiction to hear and adjudicate cases of probationary municipal employees who allege termination based upon political interference or personal bias.
            The parties cross-moved for judgment on the pleadings.[2] I heard argument on these motions on April 19, 2022.  I will now allow Defendants’ motions, and deny Mr. Griffin’s motion.
Background
            The following facts appear in the Decision or the Administrative Record (“A.R.”).[3]
            On January 17, 2019, the City, through the Mayor, issued Mr. Griffin a conditional offer of employment as a fulltime police officer with the Revere Police Department (“RPD”).  Mr. Griffin passed the required tests and, on October 17, 2019, graduated from the Police Academy.  He immediately thereafter began his one-year probationary period of employment as a fulltime police officer.
            On September 21, 2020, without prior notice or hearing, the City, through the Mayor, terminated Mr. Griffin from his position based on his conduct during his probationary period.  Specifically, on August 15, 2020, Mr. Griffin was involved in a motor vehicle accident when leaving a small social gathering while he was under an RPD-issued COVID-19 quarantine order.  At approximately 11:30 p.m., Mr. Griffin left the gathering and proceeded to his vehicle, which was parked on the street in front of the residence he had been visiting.  A video recording shows the vehicle lurch across the street, colliding with a utility pole and two other vehicles parked on the opposite side of the road.  RPD officers responded to the scene after receiving a 911 call from a neighbor.  Mr. Griffin did not call or speak to anyone at the RPD prior to the responding officers’ arrival on scene.  He also failed to promptly file a required Motor Vehicle Crash Report.
            On August 17, 2020, RPD Chief David Callahan placed Mr. Griffin on administrative leave with pay.  Chief Callahan ordered Mr. Griffin to prepare a “To/From” memorandum as well as to provide responses to specific questions regarding his conduct before and during the incident.  Chief Callahan also solicited reports from the responding officers and ordered Lieutenant Maria LaVita to conduct an internal affairs investigation.  Lieutenant LaVita found that Mr. Griffin had committed five specific instances of misconduct in connection with the incident: operating to endanger; failure to file an accident report; failure to take Police Action; insubordination (violating quarantine); and untruthfulness.
            In his September 21, 2020 termination letter, the Mayor stated that Mr. Griffin’s “conduct during [his] probationary period [was] unsatisfactory and render[ed] [him] unfit to be a police officer with the [RPD].”  A.R. at 116.  The Mayor specifically cited the violation of the quarantine order, the motor vehicle accident, and the alleged discrepancies between Mr. Griffin’s version of events and the video footage of the accident.  In a September 28, 2020 Personnel Order, Chief Callahan informed all RPD personnel that Mr. Griffin had been terminated, citing Lieutenant LaVita’s five findings of misconduct, and noting that Mr. Griffin had not completed his probationary period.
            Mr. Griffin contends that his termination was politically motivated and was the product of personal bias.  Prior to Mr. Griffin’s termination, the Mayor sought the endorsement of the Revere Police Patrol Officers Union during his reelection campaign.  The Union, whose Shop Steward is Mr. Griffin’s brother, decided to remain neutral.  In addition, Mr. Griffin asserts that there existed animus between his father and the Mayor, as well as between his family and Lieutenant LaVita.
            Analysis
1. Standard of Review
            This court may reverse, remand, or modify a Commission decision if the substantial rights of any party have been prejudiced because such decision was arbitrary or capricious, unsupported by substantial evidence, based upon an error of law, in violation of constitutional provisions, or otherwise not in accordance with law, among other reasons.  See Boston Police Superior Officers Fed’n v. Labor Relations Comm’n, 410 Mass. 890, 892 (1991).  See also M.G.L. c. 30A, § 14(7).  Mr. Griffin bears the burden of demonstrating the Decision’s invalidity.  Brackett v. Civil Serv. Comm’n, 447 Mass. 233, 242 (2006).
            In reviewing an agency decision, the court must give “due weight to the experience, technical competence, and specialized knowledge” of the Commission in deciding these matters, M.G.L. c. 30A, § 14, and must be “highly deferential to the [Commission] on questions of fact and reasonable inferences drawn therefrom.”  Police Dep’t of Boston v. Kavaleski, 463 Mass. 680, 689 (2012) (quotation and citation omitted).  In addition, the court “accords due weight and deference to an agency’s reasonable interpretation of a statute within its charge.”  Police Comm’r of Boston v. Cecil, 431 Mass. 410, 413 (2000).
2. Court’s Jurisdiction to Hear Mr. Griffin’s Administrative Appeal
            As an initial matter, the Commission contends that this court has no jurisdiction to review the Decision.  I disagree.
            General Laws c. 30A, § 14 provides that “[e]xcept so far as any provision of law expressly precludes judicial review, any person or appointing authority aggrieved by a final decision of any agency in an adjudicatory proceeding . . . shall be entitled to a judicial review thereof . . . .” (emphasis added).  Chapter 30A’s definition of “[a]gency” explicitly excludes the “civil service commission.”  M.G.L. c. 30A, § 1(2).  
            Notwithstanding this exclusion, Mr. Griffin cites to M.G.L. c. 31, § 44 as an alternative avenue for judicial review of the Decision.  General Laws c. 31, § 44 provides, in pertinent part, the following: 
Any party aggrieved by a final order or decision of the [C]ommission following a hearing pursuant to any section of this chapter . . . may institute proceedings for judicial review in the superior court within thirty days after receipt of such order or decision.
See Andrews v. Civil Serv. Comm’n, 446 Mass. 611, 615 (2006) (“A party aggrieved by a final decision of the [C]ommission may seek judicial review pursuant to G.L. c. 31, § 44.”).  “Such review is governed by the provisions of G.L. c. 30A, § 14.”  Id. 
            Despite citing section 44 in the Decision as the statutory basis for judicial review of its decisions, A.R. 163, the Commission contends that it is unclear whether section 44 confers jurisdiction on this court over Mr. Griffin’s administrative appeal where it is undisputed that he was a probationary employee.  The language of section 44, however, is clear that “any party aggrieved by a final order or decision of the [C]ommission” may appeal to the Superior Court for judicial review of such a decision.  Because Mr. Griffin was aggrieved by the Decision, I conclude that the court has jurisdiction to review his appeal.
3. Commission’s Jurisdiction to Hear Mr. Griffin’s Disciplinary Appeal
            Having determined that Mr. Griffin has a right to appeal the Commission’s Decision to this court, I turn next to the question of whether he had a right to appeal to the Commission in the first place.
            Mr. Griffin contends that the Decision is based on an error of law, is arbitrary and capricious, is unsupported by substantial evidence, is unconstitutional, and is not otherwise in accordance with the law, in that the Commission determined that it did not have jurisdiction to hear his appeal and so did not hold an evidentiary hearing regarding his claims.  He also requests that I declare that the Commission has the jurisdiction to hear and adjudicate cases of probationary municipal employees who allege termination based upon political interference and personal bias.  For the following reasons, I decline to make such a declaration.
            While a tenured employee has a right to appeal a municipal employer’s decision to terminate his employment to the Commission, the civil service law provides no such right to a probationary employee.  See New Bedford v. Civil Serv. Comm’n, 6 Mass. App. Ct. 549, 551 (1978).  See also M.G.L. c. 31, § 41 (outlining process due “a tenured employee” before discharge).  Thus, “[i]f [the police officer] [is] not tenured, then the [C]ommission lack[s] jurisdiction to hear his appeal.”  Selectmen of Brookline v. Smith, 58 Mass. App. Ct. 813, 815 (2003).  See Downer v. Northampton, 97 Mass. App. Ct. 1119, 2020 WL 2562964 at *2 (2020) (Rule 1:28 Decision) (“As a provisional employee, [plaintiff] had no tenure, [and] no right of notice or hearing” [quotation and citation omitted]); Brouillard v. Holyoke, 74 Mass. App. Ct. 1128, 2009 WL 2391916 at *1 (2009) (Rule 1:28 Decision) (where part-time reserve police officer was probationary employee, Commission accordingly lacked jurisdiction over his termination appeal).
            In its Decision, the Commission ruled that, according to “well-established precedent” and “the considerable weight of authority,” A.R. 160-161, Mr. Griffin had no right to appeal his termination to the Commission under M.G.L. c. 31, §§ 41-43 as he was terminated within his probationary period.  Mr. Griffin did not dispute before the Commission, nor does he dispute before the court, that he was terminated during his probationary period.  See M.G.L. c. 31, § 61 (“Following his original appointment as a permanent full-time police officer . . . a person shall actually perform the duties of such position on a full-time basis for a probationary period of twelve months before he shall be considered a full-time tenured employee in such position . . . .”).
            Nonetheless, Mr. Griffin asks that I create an exception to the rule that a probationary employee does not enjoy the same right of appeal to the Commission as a tenured employee.  That exception, he argues, should apply to any probationary employee who claims that his termination was the result of political interference and/or personal bias.  Conceding that Massachusetts courts have yet to decide this specific issue, he points me to dicta in New York appellate decisions applying that state’s civil service law.  See Garcia v. Bratton, 649 N.Y.S.2d 703, 706 (N.Y. App. Div. 1996), aff’d 688 N.E.2d 495 (N.Y. 1997) (police officer not entitled to hearing where still probationary and where she failed to demonstrate discharge was in “bad faith”); Matter of Vaillancourt v. New York State Liquor Auth., 544 N.Y.S.2d 609, 610 (N.Y. App. Div. 1989), aff’d 553 N.E.2d 1022 (N.Y. 1990) (“As a general rule, a probationary employee may be terminated without a hearing and without reasons being stated and, in the absence of any allegation or demonstration that the termination was because of constitutionally impermissible reasons or prohibited by statute or policies established by decisional law, courts will not interfere with the discretion of the appointing officer . . . .” [quotation and citation omitted]).
            Mr. Griffin’s argument, resting as it does on core principles underlying the civil service law, has some appeal.  However, I am not persuaded to create the exception Mr. Griffin seeks.  Binding decisional law says, contrary to Mr. Griffin’s view, that no such exception should be created precisely because of the policies that undergird the Massachusetts civil service laws related to probationary periods for police officers.[4]  For example, while the underlying purpose of the civil service system is “to guard against political considerations, favoritism, and bias in governmental employment decisions,” Falmouth v. Civil Serv. Comm’n, 447 Mass. 814, 824 (2006) (quotation and citation omitted), the Supreme Judicial Court has “made clear that care must be taken ‘not to hobble the employer unduly in the process of selection for tenure because dislodgment thereafter is notoriously difficult.’”  Cecil, 431 Mass. at 414, quoting Costa v. Selectmen of Billerica, 377 Mass. 853, 860-861 (1979).  “With respect to police officers . . . in particular, the Legislature recognized the special need of a prolonged probationary period[:] . . . Courage, good judgment, and the ability to work under stress in the public interest and as part of an organization, are qualities that are not quickly perceived.”  Cecil, 431 Mass. at 414 (quotation and citations omitted).  See also Brandao v. Boston Police Dep’t, SUCV2019-2606-C at 8 (Mass. Super. Ct. May 1, 2020) (Gordon, J.) (“[T]he unmistakable purpose of § 61 . . . is to ensure that all employees receive a full 12 months of oversight in their ‘actual’ performance on the job before being invested with tenure.”).  If an exception for cases like this one is to be created, that is the responsibility of the state legislature or the appellate courts, not the Superior Court.  
            Affording substantial deference to the Commission’s reasonable interpretation of M.G.L. c. 31, §§ 41-43, see Spencer v. Civil Serv. Comm’n, 479 Mass. 210, 216 (2018), and where such interpretation is supported by the relevant case law, I conclude that the Decision, which rests on the jurisdictional determination, was not based on an error of law, arbitrary or capricious, unsupported by substantial evidence, unconstitutional, or otherwise not in accordance with the law.[5] [6]  Accordingly, I decline to declare that the Commission has the jurisdiction to hear and adjudicate cases of probationary municipal employees who allege termination based upon political interference and/or personal bias.
4. Constitutional Due Process Claim
            In their motion, the City and the Mayor contend that Mr. Griffin has insufficiently pleaded a separate cause of action alleging a violation of due process stemming from the City’s failure to hold a name-clearing hearing following his termination.  Even if he had adequately pleaded such a claim, they further contend, he cannot maintain a due process claim under 42 U.S.C. § 1983 because he was afforded the due process he was entitled to and properly sought.
            General Laws c. 31, § 41, third paragraph provides, in pertinent part:
If a person employed under a provisional appointment for not less than nine months is discharged as a result of allegations relative to his personal character or work performance and if the reason for such discharge is to become part of his employment record, he shall be entitled, upon his request in writing, to an informal hearing before his appointing authority or a designee thereof . . . .
            In his reply to the City’s and the Mayor’s motion, Mr. Griffin contends that he has a liberty interest in a name-clearing hearing and that he was deprived of such a hearing, despite requesting one with the Mayor several times, in violation of his constitutional rights.  See Fontana v. Commissioner of Metro. Dist. Comm’n, 34 Mass. App. Ct. 63, 67 (1993) (“A liberty interest [in a name-clearing hearing] arises where . . . a public [probationary] employee is discharged because of stigmatizing charges alleged by the employee to be false and which are disseminated to the public or are likely to be communicated to prospective employers.”).
            However, the Complaint does not make clear the contours of Mr. Griffin’s purported due process claim.  The Complaint references 42 U.S.C. § 1983, and contains allegations which suggest that Mr. Griffin was entitled to a name-clearing hearing and was deprived of such process.  See e.g., Compl. at ¶ 33 (“The Commission violated [Mr.] Griffin’s due process rights by allowing the City to deny [Mr.] Griffin a hearing to clear his name as provided by statute.”); Compl. at Relief Requested, ¶ Fourth (“The Plaintiff respectfully requests that the Court: . . . Order that [the City] hold a name clearing hearing in accordance with statutory mandates . . . .”).  The Complaint, however, fails to state a claim for a violation of Mr. Griffin’s due process rights separate from his c. 30A claim, and fails to make clear against whom he maintains such a claim.[7]  Because the Complaint has not yet been amended, Mr. Griffin may move for leave to amend his Complaint, solely for the purpose of better defining this purported due process claim.
Conclusion and Order
            Mr. Griffin’s Motion for Judgment on the Pleadings is DENIED and the Civil Service Commission’s and the City of Revere and Mayor Brian Arrigo’s Cross Motions for Judgment on the Pleadings are ALLOWED.  The Decision of Defendant Civil Service Commission is AFFIRMED.  If Mr. Griffin wishes to move to amend the Complaint to better define a due process claim against Defendants other than the Commission, he may serve such a motion under Superior Court Rule 9A by July 31, 2022.
 
@/s/Paul D. Wilson Justice of the Superior Court
 
@June 21, 2022
 
-------------------------------------
 
            [1] City of Revere and Mayor Brian Arrigo
            [2] The City and the Mayor together moved for judgment on the pleadings and the Commission separately moved for judgment on the pleadings.
            [3] The City and the Mayor moved to strike the exhibits Mr. Griffin attached to his motion as they were not included in the Administrative Record, which he did not move to supplement.  See McGovern v. State Ethics Comm’n, 96 Mass. App. Ct. 221, 227 (2019) (review of agency decision “confined to the administrative record”).  Because I did not rely on those exhibits in reaching my decision, the City’s and the Mayor’s Motion to Strike is DENIED as moot.
            [4] The Commission likewise was unpersuaded by this argument.
            [5] Mr. Griffin makes two additional arguments in support of his c. 30A appeal against the Commission: (1) it improperly weighed “undisputed” evidence of the quarantine order against Mr. Griffin where, he contends, that order was unlawful; and (2) it failed to protect Mr. Griffin from being labeled as “untruthful” by declining to hold a hearing to determine if the RPD exercised due diligence in making that characterization.  Because the Commission decided that it lacked jurisdiction over Mr. Griffin’s appeal, it did not hold an evidentiary hearing regarding the merits of these arguments, nor did it address them in its Decision.  Because I agree with the Commission that it lacked jurisdiction to hear Mr. Griffin’s appeal, I likewise do not reach these arguments.
            [6] Mr. Griffin also takes issue with the Commission’s decision to exercise its discretion not to open an investigation into whether Mr. Griffin’s rights were violated.  See Decision, A.R. at 161 n.4.  See M.G.L. c. 31, § 2(a) (Commission shall have power to “conduct investigations at its discretion or upon the written request of . . . an aggrieved person”).  However, my review of the Commission’s decision not to open an investigation must be deferential to the Commission’s discretionary authority.  See Hotchkiss v. State Racing Comm’n, 45 Mass. App. Ct. 684, 695-696 (1998).  In addition, Mr. Griffin does not point to any evidence in the Administrative Record demonstrating that he properly requested such a Commission investigation.
            [7] Mr. Griffin may be claiming that the Commission violated his constitutional rights by failing to hold an evidentiary hearing, name-clearing or otherwise, because it concluded that it lacked jurisdiction to hear his appeal.  However, I have already concluded above that the Commission’s choice not to hold a hearing was correct, and so its Decision was not unconstitutional on this basis.
 
xxz